### ADOLPH KASTOR & BROS., Inc., v. FEDERAL TRADE COMMISSION.

### No. I.

Circuit Court of Appeals, Second Circuit.

Nov. 12, 1943.

Sylvan Gotshal, of New York City, for petitioner.

Joseph J. Smith, Jr., of Washington, D. C., for respondent.

Boy Scouts of America, amicus curiae.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This case comes before us upon a petition to review an order of the Federal Trade Commission which forbade the petitioner to use the words, "Scout," "Boy Scout," or "Scouting," upon, or in connection with, any knives made or sold by it. The facts upon which the order issued are in substance as follows. The Kastor Company, or its predecessor—a partnership—has been making and selling cutlery and the like since 1879; and the subject of this controversy is a "Scout Set," comprising a three-bladed "Scout Knife," and a "Sportsman's Knife," sold together in a box, for fifty cents. The "Scout Knife" has one large cutting blade, a can opener, and a combination screw driver and bottle opener; the "Sportsman's Knife" is a hunting knife with one large blade and a bone handle. On the cover of the cardboard box it used to print the words, "Scouting Set," with the picture of a tent, a campfire, and boys in "Boy Scout's" uniform; but this box it discarded some years ago, and it now sells the set in a plain box.

It also makes and sells a four-bladed "Scout Knife" like the three-bladed knife just mentioned, except that this knife has a leather punch in addition to the other tools. It introduced testimony that it had begun selling a similar "German Army" knife, marked "Scout Knife," as early as 1895 like the present "Scout Knife"; and that before 1910 it had also imported from England, and sold, hatchets and knives with the words, "Boy Scout," on the blades. The Commission found that before 1910 "there was and had been no pocket knife on the market marked with the word 'Scout'"; but it is not necessary for us to decide whether the testimony should have prevailed, because, as will appear, such user would be in any event immaterial, whatever its length. In the year 1910, the sale began which the order forbids and it has continued ever since except that the legend, "Boy Scout" was discontinued more than fifteen years ago, giving place to "Scout," simpliciter.

The Boy Scouts of America is a corporation organized under the laws of the District of Columbia on February 8, 1910; its general activities are so well known that it is scarcely necessary to describe them in detail. At present there are sold with its consent and by its license two-bladed knives costing $1.50, which bear the legend, "Official Knife—Boy Scouts of America," the insignia of the organization, and the motto—"Be Prepared." On the handle of these there is a disc which also carries the insignia, and on the box in which it is sold the insignia appear. No knives sold with its consent—no "official knives"—bear merely the words, "Scout," or "Boy Scout." The Commission has found, however, that "even before the incorporation of the Boy Scouts of America, the words 'Scout' and 'Scouting' had acquired a secondary meaning as applying to the Boy Scout movement." There was adequate support for that conclusion in the testimony of persons who were in a position to know the public mind, and whom the Commission credited. Indeed, the Commissioner of Patents refused to register the name, "Winchester Scout" as a trade-mark for pocket knives upon the opposition of the Boy Scouts of America. Boy Scouts of America v. Winchester Repeating Arms Co., 15 Trade Mark Reporter 142. See, also, In re Excelsior Shoe Company, 40 App.D.C. 480. At the outset we hold therefore that the word, "Scout," when applied to a boy's pocket knife, suggests, if indeed it does not actually indicate, that the knife is in some way sponsored by the Boy Scouts of America. It is true that this suggestion is vague; it does not mean that the Boy Scouts sell the knife, and would be misleading if it did, for they sell no knives of any kind. But it does, we think, indicate that the knives have the countenance of the organization, either by being licensed as an "official knife," or by having some less explicit recognition.

That is enough as matter of law under the circumstances. In cases of trademark the right test is to compare what prejudice it will impose upon an infringer to avoid infringing, and what will be the damage to the "owner" of the mark, if the infringer persists. In the case at bar the Kastor Company is using a word of common speech, which all are entitled prima facie to use; for this reason we agree that it may demand that the Boy Scouts show some superior interest. On the other hand it is an error to suppose that its past user—even though dated, as it claims, from 1895—adds any privilege to that of a newcomer. The only protected private interest in words of common-speech is after they have come to connote, in addition to their colloquial meaning, provenience from some single source of the goods to which they are applied. The Kastor Company does not assert that the word, "Scout," on a pocket knife means anything of the sort; and no such assertion could be sustained, for there is not a shred of evidence in the record to sustain it. Therefore, the decision turns upon whether the suggestion—to put it no more strongly—from the name, "Scout," upon a boy's pocket knife that the Boy Scouts of America sponsor it as proper for Boy Scouts, is enough to support the order. We hold that it is; that the Boy Scouts have a cognizable interest in preventing such possible confusion. It is not even necessary that the label shall lead "boy scouts" to buy Kastor knives supposing that they are "Official Knives"; boys who are not "Scouts" may be led to buy them because in their minds they vaguely have the imprimatur of the Boy Scouts of America. That interest the law will protect against an opposing interest no greater that that of all persons in the use of common speech. We have again and again decided, in cases where a merchant's mark has been used upon goods which he does

826

not in fact sell, but may be thought to be selling, that he may stop the use. No one need expose his reputation to the trade practices of another, even though he can show no pecuniary loss. Aunt Jemima Mills v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039; Anheuser-Busch v. Budweiser M. P. Co., 2 Cir., 295 F. 306; France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304; Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972; L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272; Emerson Electric Mfg. Co. v. Emerson R. & P. Corp., 2 Cir., 105 F.2d 908. The Boy Scouts of America have a legal grievance if anyone buys the fifty cent knife supposing that it has their approval. The Kastor Company is in a dilemma: either its knives will sell as well under some other name, or the name, "Scout," gives them an advantage to the prejudice of the Boy Scouts.

In the foregoing we have not relied upon section 7 of the Act of Congress of June 15, 1916, 36 U.S.C.A. § 27. We have not done so, because the validity of that section has not been argued before us, and because there might be some question whether the word, "Scout," taken by itself, was within the clause "words or phrases * * * used by the Boy Scouts of America in carrying out its program." True, it is a part of "words or phrases" so used; but whether the statute meant to go so far as to protect a single word broken from its context, might be open to debate. Moreover, the Commission does not appear to have relied upon the statute in making its order.

Order affirmed.