**GIRL SCOUTS OF the UNITED STATES OF AMERICA and Boy Scouts of America, Plaintiffs,**

v.

**R. Lee HOLLINGSWORTH, individually and doing business as the Hollingsworth Company, Defendant.**

**Civ. A. No. 19628.**

United States District Court
E. D. New York.

July 13, 1960.

Nims, Martin, Halliday, Whitman & Williamson, New York City, for plaintiff Girl Scouts of the United States of America; Hughes, Hubbard, Blair & Reed, New York City, for plaintiff Boy Scouts of America (Wallace H. Martin, Richard W. Hogue, Jr., Richard A. Givens and Stewart L. Whitman, New York City, of counsel).

R. Lee Hollingsworth, pro se.

ABRUZZO, District Judge.

The plaintiffs instituted this action to enjoin the defendant who appears herein *pro se* from using in any manner the words "Safety Scout," "Safety Scout Master," "Scout," "Scouts," "Scouting," or any word or words, syllable or syllables confusingly similar thereto, alone or in combination with any other syllable, syllables, word or words, on or in connection with the promotion, advertising, offering for sale or sale of any program, goods or services, or either of them, not plaintiffs' which, as a result of such use, are likely to be purchased as and for plaintiffs' program, goods or services or as sponsored by them, or either of them; and from using said words in association and in combination with defendant's commercially advertised radio and television programs, and from using said words

alone or in combination with the word "safety" in connection with the advertising, sale, offering for sale or promotion of any safety program unless sponsored or approved by plaintiffs and each of them in writing; that defendant be required to deliver up for destruction any and all containers, packaging materials, labels, emblems, advertising matter, stationery and other goods and materials bearing said words alone or in combination, or with a design, or any other word or words, syllable or syllables confusingly similar thereto; that the Commissioner of Patents be directed to enter judgment for plaintiff Girl Scouts sustaining its opposition No. 37,161 to defendant's application, Serial No. 694,487, filed in the United States Patent Office, to register the words "Safety Scout" with design; that defendant be directed to surrender any and all certificates of registration of the words "Safety Scout" alone or with a design, issued to the defendant under the laws of individual states, and to petition for cancellation of such registrations; that defendant account for and pay over to plaintiffs all damages sustained by them and profits realized by him by reason of his alleged unlawful acts; and that the Court treble the amount of damages for infringement of the registered trademarks of the plaintiff Girl Scouts, together with reasonable attorneys' fees in this action.

The plaintiffs now move for summary judgment and the defendant moves to dismiss the complaint.

### Pleadings.

The complaint alleges infringements and acts of unfair competition by the defendant of registered and common-law trademarks of the plaintiff Girl Scouts and common-law trademarks of the plaintiff Boy Scouts by the defendant's adoption and using the term "Safety Scout" in interstate commerce in association and in connection with defendant's promotion of a commercial advertising and merchandising program; that he has used in interstate commerce the term "Safety Scout" on products and goods of all kinds including, but not limited to, children's clothing, bicycles, toys, pocket pencil and pen protective shields, school supplies, pencils, pens, jewelry, watches, bracelets, tie clasps, belts, belt buckles, rings, candy bars and bubble gum, and that as part of his commercial advertising and promotional venture he has copied and incorporated essential features of plaintiffs' safety programs by using the terms, "Scouts," "Safety Scout" and "Safety Scoutmaster," in association and conjunction with a safety program which defendant sells and offers to sell in interstate commerce to commercial sponsors on a national basis, to television and radio networks, and to any individual or company who will buy his products, goods and supplies, and offering to furnish to any purchaser of said program products and goods and membership cards and emblems bearing the words "Safety Scout" to be distributed as give-away prizes to girls and boys as part of his merchandising plan, and for the purpose of creating the impression among children and their parents that the holder of a Safety Scout Emblem is a member of either plaintiff; that defendant has used and threatens to continue using the words "Safety Scout Program" as the title of a radio and television program promoting safety and directed primarily to boys and girls. In the script for this program the announcer is referred to as Safety Scoutmaster of Ceremonies and Safety Scoutmaster, and said program invites girls and boys to become Safety Scouts and offers membership cards and emblems bearing the words "Safety Scout" to all who apply. Said radio and television programs are also used to promote and sell defendant's advertising service, products and goods under the designation "Scout"; that in furtherance of defendant's plan to appropriate plaintiffs' good will and trademarks, defendant on August 3, 1955, filed an application in the United States Patent Office to register the words "Safety Scout" and design for men's, women's, boys' and girls' clothes, and also applied for and secured registration of said words and design

under individual state laws; that the word "Safety Scout" alone and in design combination are confusingly similar to plaintiffs' trade names as registered and common-law trademarks which include the word "scout" or a derivative thereof, and the goods and services in connection with which defendant is using the words "Safety Scout" alone and in design combination are of the same descriptive properties or type as the goods sold and services performed by plaintiffs, and easily deceives the public into purchasing defendant's goods and services in the mistaken belief that they are the goods of plaintiffs or sponsored by, or connected with, or produced under the supervision of the plaintiffs; and that defendant's acts dilute and reduce the value of plaintiffs' good will and are committed with the fraudulent intent and purpose of appropriating plaintiffs' good will.

Each plaintiff is a federal corporation organized and incorporated under Acts of Congress. The Boy Scouts was incorporated on June 15, 1916, and the Girl Scouts on March 16, 1950, and the Act under which the latter was incorporated was amended on August 17, 1951. The Boy Scout Movement was originated in England in 1906 by Lord Robert Baden-Powell as the "Boy Scouts," and groups of Boy Scouts were established and organized in the United States prior to 1910. In 1910, plaintiff Boy Scouts' predecessor was incorporated in the District of Columbia, and on June 15, 1916, it was incorporated by Act of Congress and succeeded its predecessor as a non-profit, nonpolitical, nonsectarian character building membership organization open to all boys regardless of economic status, race or creed, having for its major purposes to promote the ability of boys to do things for themselves, to train them in Scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues as a preparation for their future responsibilities in the home and service for the community.

The Girl Scout Movement was founded by Mrs. Juliette Gordon Low in 1912 in Savannah, Georgia, for purposes similar to that of the Boy Scouts.

For a long period of time prior to the defendant's alleged competing acts and conduct, the plaintiffs operated through local councils and troops in every state and territory of the United States and have used and are using numerous terms including the word "Scout" such as Girl Scout, Boy Scout, Tenderfoot Scout, etc. (36 terms are set forth in the complaint). Many of the terms used by the Girl Scouts are used with trefoil design and by the Boy Scouts with the letters B.S.A. in association and connection with their activities; that an essential part of the purposes consists of education and teaching the principles of safety, and safety programs have been developed as one of their major educational projects and play an important part in the activities of the groups comprising their membership.

Safety as taught by plaintiffs covers a wide field including without limitation safety methods and practices to be employed in the community, home, on the farm, and out of doors. As an incentive to Girl Scouts and Boy Scouts to learn about safety, the plaintiffs award proficiency or merit badges designated Health and Safety Badges to those who meet the prescribed requirements. Knowledge of safety rules and principles also is a basis required for the award of similar badges in other fields forming part of their safety programs. The plaintiffs have received the cooperation of the National Safety Council and of federal, state and local programs, and their members actively participate in such programs as Safety Leaders and Safety Scouts.

The plaintiffs for a long period of time have continuously and are using in interstate commerce designating marks, words and phrases which include the word "Scout," or a derivative thereof, as trademarks and designating marks in, or in connection with, the sale of many articles of merchandise which have been advertised and widely sold by the plaintiffs throughout the several states and now

have great value to the plaintiffs as identifying the plaintiffs and their respective products exclusively.

The plaintiff Girl Scouts is the owner of numerous registered trademarks which include the terms Girl Scout, Girl Scouts (12 are listed in the complaint), and the letters G S and trefoil design covering clothing, fabrics, badges, flags and pennants, publications, jewelry, purses, handbags and shoes.

As heretofore stated, the defendant appears *pro se* and his answer is rhetorical, argumentative and unlegalistic. In his answer the defendant alleges that the plaintiffs have a distinct obligation to teach safety and concedes that this is done but contends that their first efforts should be for their organizations, without hindering the efforts of other organizations in keeping safety before the public; that no possible discrimination could conceivably be practiced because a Safety Scout wears no uniform; that plaintiffs are here asking in effect that protection be granted to their franchised outlets which make up real and tangible money profit from the sale of franchised products; that each store pays for the franchise and is permitted to make a profit from sales and from manufacturers who are also licensed under plaintiffs' trademarks; that plaintiffs have tried to tie in as many words, things and materials to their ownership by their creative program, did not produce "Safety Scout," and the only issue in the case is the use of the word "Scout." (Defendant then poses this question in his answer, "Do the Boy and/or Girl Scouts have exclusive use of this word"?). The defendant denies that the word "Scout" or any combinational use belongs to plaintiffs in that there is no Congressional Act giving anyone exclusive use of the word. He denies that he appropriated anything belonging to any others. He admits that he wrote, produced and broadcast the Safety Scout Program; created, drew, designed and used in interstate commerce, and registered the Safety Scout emblem as an outgrowth of the Safety Scout Program; he admits that he expects to continue to exploit the program and trademark, and contends that he has a right to continue because the Patent Office allowed and published the Safety Scout trademark. He contends that no one has the exclusive right to any one word except where the word is first established to indicate a product in commerce between the states, by design in the manner of shaping or building the letters of the word to be distinctly distinguishable and associated with the product, and he inquires, "Does anyone have exclusive use of the word 'Scout' "? He denies that the words "Safety Scout" alone and in design combination are confusingly similar to plaintiffs and that plaintiffs' allegation as to it being confusingly similar is conjecture. He claims that the allegations in the complaint that the defendant has infringed plaintiffs' registered and common-law trademarks and competed unfairly with plaintiffs, and that the defendant's acts are calculated to deceive and do deceive the public into purchasing defendant's goods and services in the mistaken belief that they are the goods and services of the plaintiffs, or that the defendant's acts tend to dilute and reduce the value of plaintiffs' good will, or that the defendant's acts have been and are committed with the fraudulent intent and purpose of appropriating plaintiffs' good will, and the allegation that plaintiffs have suffered serious damage, are pure conjecture.

### Plaintiffs' Motion.

Many affidavits have been submitted in support of the plaintiffs' motion for summary judgment. Many of the averments contained in the affidavits repeat the allegations contained in the complaint.

The defendant was examined before trial by the plaintiffs, and his deposition has also been submitted by the plaintiffs in support of their motion.

In addition to the allegations of the complaint, the affidavits and the deposition set forth that defendant is an individual doing business as the Hollingsworth Company and is also president of radio station WKBS in Nassau County,

New York. The Hollingsworth Company is an inactive agency registered in Nassau County to handle some of defendant's ideas, one of which was to carry on a business relating to Safety Scouts and business in the field of commercial safety. In this business he has sold and plans to sell to sponsors commercial radio and television programs which have a profitable merchandising feature for the sale of products bearing the words "Safety Scout." As an example, he held a purely commercial radio talent program which was sponsored by and held in the showroom of a Ford automobile agency for 13 weeks. Safety Scout membership cards were given out to boys and girls at the broadcast and 400 to 500 T-shirts bearing the term "Safety Scout" were given away by the agency. The defendant has given out Safety Scout membership cards to thousands of children and any child became a Safety Scout by keeping the membership card or wearing the Safety Scout emblem.

Defendant's promotional scheme is to make money, and he plans to put the Safety Scout Program on nationwide radio and television programs for a large sponsor. He has no background knowledge of safety, nor has he created a safety program for children other than listing simple safety rules on the Safety Scout membership identification cards. The promotion of safety is an integral part of both the Girl Scout and Boy Scout Movements and is basic in all Girl Scout and Boy Scout activities.

Girl Scouts and Boy Scouts must meet many requirements in order to earn proficiency or merit badge awards. Both plaintiffs have received awards of merit from the National Safety Council for meritorious activities in home safety education, and they are currently assisting the New York City Fire Department in a fire safety program, part of which is to contact Spanish-speaking people in New York to interpret fire prevention rules and to distribute literature.

While defendant sells various articles of clothing and products in order to make money, the net receipts from similar articles sold by plaintiffs together with funds received from other sources are devoted to administration and extension of their programs. In addition to selling clothing products, defendant also sells his emblems.

The defendant contends that the action is fundamentally based on two premises, (1) whether or not the plaintiffs have the exclusive use of the word, "Scout," a word that has been in use for hundreds of years, and (2) that the purposes of the Boy Scouts as set forth in its charter contains not a single reference to the restriction of the use of "Scout" or "Scouts" in writings such as plays, radio and television scripts and cannot be construed to restrict competition by others in the field of safety programs except where copyrighted or registered trademarks are in question in such activities. The defendant also avers that the plaintiffs have dozens of registered trademarks, none of which singly includes the word "Scout," nor of Safety Scout, with or without any form or design. Defendant assumes that because a registered trademark approved by the United States Patent Office and published in the Patent Office Gazette was granted to his Safety Scout Program, and because his membership and radio script was copyrighted, he has the right to use the word "Scout." He avers that the Patent Office has vast knowledge, experience and familiarity with the laws passed by Congress relative to trademarks and has not as yet rejected the trademark "Safety Scout" and design. He claims that neither plaintiff owns a trademark relating to safety although they do have many covering clothing and products. He maintains that a restriction on the use of the word "Scout" is a breach of the freedom of the press and of expression and of the free usage of the English language.

Various other contentions are made by the defendant, some of which are that the plaintiffs have no monopoly in the field of safety education; that plaintiffs during the last three or four years have promoted safety as never before but this

activity was generated because of the existence of the Safety Scout Program, the Safety Scout trademark, and Safety Scout emblems, and because of defendant's contemplated resumption in the field of safety education; that defendant's emblem has a distinctive barricade shape of design and of color arrangement which blend into an attractive emblem never seen or heard of before its creation by defendant.

The affidavits in support of the motion draw attention conclusively to the fact that the defendant's actions have tended to confuse the public into the belief that his program is an extension of or sponsored by either the Boy Scouts, Girl Scouts, or both.

The plaintiffs have conducted a house-to-house survey by college students. Each person questioned was shown a T-shirt with a "Safety Scout" emblem on it, and a large percentage associated the T-shirt with either the Girl Scouts or Boy Scouts.

The defendant is his own lawyer. As stated in this opinion, the defendant's affidavit points up the fact clearly that he is his own lawyer, and there is a rambling set of arguments that skirt around and do not meet the facts set forth in the plaintiffs' application for summary judgment. He does not deny that his actions tend to confuse the public. He does not deny the facts contained in many of the affidavits in support of the plaintiffs' motion. He does not deny that his reason for resisting this motion for summary judgment is not altruistic in its nature alone, but that he intends to make a business of selling his script and his safety program to large companies for individual profit alone.

### Law.

■ Surveys are admissible to show as a fact the reaction of the ordinary householder to a given set of facts. United States v. 88 Cases, More or Less, etc., 3 Cir., 187 F.2d 967, certiorari denied, 342 U.S. 861, 72 S.Ct. 88, 96 L.Ed. 648.

The Boy Scout statute provides (36 U.S.C.A. § 27):

"§ 27. *Exclusive right to emblems, badges, marks and words or phrases*

"The corporation shall have the sole and exclusive right to have and to use, in carrying out its purposes, all emblems and badges, descriptive or designating marks, and words or phrases now or heretofore used by the Boy Scouts of America in carrying out its program, it being distinctly and definitely understood, however, that nothing in this chapter shall interfere or conflict with established or vested rights, June 15, 1916, c. 148, § 7, 39 Stat. 228."

The Girl Scout statute provides (36 U.S.C.A. § 36):

"§ 36. *Exclusive right to emblems, badges, marks and words or phrases*

"The corporation shall have the sole and exclusive right to have and to use, in carrying out its purposes, all emblems and badges, descriptive or designating marks, and words or phrases now or heretofore used by the old corporation and by its successor in carrying out its program, including the sole and exclusive right to use, or to authorize the use of, during the existence of the corporation, the badge of Girl Scouts, Incorporated, which is referred to in the Act of August 12, 1937 (Public, Numbered 259, Seventy-Fifth Congress; 50 Stat. 623), and all the other aforesaid emblems and badges, descriptive or designating marks, and words or phrases in connection with the manufacturing, advertising, and selling of equipment and merchandise: *Provided, however,* That nothing in this chapter shall interfere or conflict with established or vested rights. Mar. 16, 1950, c. 62, § 6, 64 Stat. 24; Aug. 17, 1951, c. 328, 65 Stat. 192."

■ Under both of these statutes Congress gave the plaintiffs the sole and

exclusive right to have and to use all emblems and badges, descriptive or designating marks, and words or phrases now or heretofore used by them. It would appear from a reading of both provisions that Congress granted more to the plaintiff Girl Scouts than to the plaintiff Boy Scouts in that the phrase, "and words or phrases in connection with the manufacturing, advertising, and selling of equipment and merchandise," which appears in the Girl Scout statute does not appear in the Boy Scout statute, however, this is not so.

In Adolph Kastor & Bros. v. Federal Trade Commission, 2 Cir., 138 F.2d 824, the Court sustained an order of the Federal Trade Commission directing the petitioner to cease and desist from marking knives manufactured by it, or the boxes or covers which hold them, or any cards attached to them, with words, "Scout," or "Boy Scout," or "Scouting," or with any other symbol used by the Boy Scouts of America. In sustaining the order the Court specifically stated that it did not rely on 36 U.S.C.A. § 27. The Court held (at page 825):

"At the outset we hold therefore that the word, 'Scout,' when applied to a boy's pocket knife, suggests, if indeed it does not actually indicate, that the knife is in some way sponsored by the Boy Scouts of America. *It is true that this suggestion is vague; it does not mean that the Boy Scouts sell the knife, and would be misleading if it did, for they sell no knives of any kind. But it does, we think, indicate that the knives have the countenance of the organization, either by being licensed as an 'official knife,' or by having some less explicit recognition.* (Italics added.)

"* * * In the case at bar the Kastor Company is using a word of common speech, which all are entitled prima facie to use; for this reason we agree that it may demand that the Boy Scouts show some superior interest. On the other hand it is an error to suppose that its past user—even though dated, as it claims, from 1895—adds any privilege to that of a newcomer. The only protected private interest in words of common-speech is after they have come to connote, in addition to their colloquial meaning, provenience from some single source of the goods to which they are applied. The Kastor Company does not assert that the word, 'Scout,' on a pocket knife means anything of the sort; and no such assertion could be sustained, for there is not a shred of evidence in the record to sustain it. *Therefore, the decision turns upon whether the suggestion—to put it no more strongly—from the name, 'Scout,' upon a boy's pocket knife that the Boy Scouts of America sponsor it as proper for Boy Scouts, is enough to support the order. We hold that it is; that the Boy Scouts have a cognizable interest in preventing such possible confusion. It is not even necessary that the label shall lead 'boy scouts' to buy Kastor knives supposing that they are 'Official Knives'; boys who are not 'Scouts' may be led to buy them because in their minds they vaguely have the imprimatur of the Boy Scouts of America. That interest the law will protect against an opposing interest no greater that [sic] that of all persons in the use of common speech. * * *"* (Italics added.)

In the foregoing case the Court cited Boy Scouts of America v. Winchester Repeating Arms Co., 15 Trade Mark Reporter 142. In 1925, the Commissioner of Patents denied registration of the words, "Winchester Scout," as a trademark for pocket knives upon the opposition of the Boy Scouts of America upon the ground that the mark sought to be registered included the word, "Scout." After referring to the provision of the Boy Scout statute, the Commissioner said:

"Irrespective of any exclusive rights that may have been given to the Boy Scouts of America by the

above quoted section, the record in this case shows that the word 'Scout' and the like has been extensively used by that organization for many years for a variety of articles. In fact, the record shows that the right of the Boy Scouts of America to the use of the word 'Scout' or 'Scouts' in its activities has been recognized by numerous manufacturers who at substantial losses to themselves have voluntarily ceased to use as trademarks such words as were common to the Boy Scouts of America when their attention was called to the fact that these words were considered by the Boy Scouts of America to be the property of that organization. Moreover, the record sustains the claim that a 'Scout' knife was placed upon the market for the Boy Scouts of America long before January 15, 1923, the date claimed by the applicant as the time when it began to use 'Winchester Scout' as a trademark for pocket knives.

\* \* \* \* \* \*

"The record further shows that from 1911 to 1922 the New York Knife Company was the authorized maker of the Boy Scout knife and that since 1922 the Ulster Knife Company and the Remington Arms Company have been the official manufacturers of the knife bearing that mark.

"From this it would seem that these knives are recognized by the Scouts and the public in general as knives which have the endorsement of the Boy Scout organization, and not of Winchester origin. To now permit the applicant to register the word 'Scout' as part of its mark would enable it to place upon the market a knife which would doubtless be regarded as a knife for Boy Scout use and confusion in the trade would be the natural and probable result of such action. \* \* \*"

It must be remembered that not only registered trademarks are involved in the instant action but also common-law trademarks. The law pertaining to the validity of common-law trademarks has been expounded in E. F. Prichard Co. v. Consumers Brewing Co., 6 Cir., 136 F.2d 512, at page 518, where it was held:

"We have before us a case involving the right to a common law trademark. This right exists independent of the statute, registration simply constituting prima facie evidence that the registrant is entitled to the mark. Phillips v. Hudnut et al., 49 App.D.C. 247, 263 F. 643. Trademarks are not dependent on statutory enactment, but arise out of common law from prior exclusive appropriation and use. Registration is not controlling in a suit involving common law rights to a registered mark or in a suit for unfair competition involving its use. United States Ozone Co. et al. v. United States Ozone Co. of America, 7 Cir., 62 F.2d 881. In a suit in a federal court to enjoin wrongful use of a trade name, whether it was used in interstate commerce or registered as a trademark under act of Congress, is immaterial; the real question is whether the mark was actually adopted and used by the plaintiff. The title to a trade-mark is independent of its registration. Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, Inc., D.C.Pa., 20 F. Supp. 703. As recognized by the common law, a trade-mark is generally the growth of a considerable period of use rather than a sudden invention; and the exclusive right to it grows out of its use and not its mere adoption. In re Trade-Mark Cases, 100 U.S. 82, 25 L.Ed. 550. \* \* \*"

In Triangle Publications v. Rohrlich, 2 Cir., 167 F.2d 969, at page 972, the Court held:

"It is settled law that a plaintiff who has established a right to a trade name which is fanciful or arbitrary or has acquired a secondary meaning is entitled to protection of his reputation against the use of

that name by others even upon non-competing goods, if the defendant's goods are likely to be thought to originate with the plaintiff. Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972; L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272; Standard Brands v Smidler, 2 Cir., 151 F.2d 34; * * *"

In Ronson Art Works v. Gibson Lighter Co., 3 A.D.2d 227, at page 231, 159 N.Y.S.2d 606, 610, it was held:

"There is an area of unfair competition which does not consist of palming off, but of creating confusion. It exists where a merchant or manufacturer mingles the permissible activity of imitating a product in the public domain and selling the copy at a lower price, with such improper presentation, packaging or advertising of his product as would tend to deceive the public."

In the instant action, the plaintiffs have made out a case of both trademark infringement and unfair competition. The logical consequence of the defendant's acts and conduct is such as to cause deception. The words, "Safety Scout," when applied to the articles of clothing, merchandise and products upon which the defendant has placed or intends to place the emblem, "Safety Scout," suggests, if it does not actually indicate, that these articles are sponsored by the plaintiffs. Assuming arguendo that actual deception is not involved in the instant action, the plaintiffs must still prevail.

In Notaseme Hosiery Co. v. Straus, 2 Cir., 201 F. 99, at page 100, it was said:

"In our opinion the evidence is insufficient to show actual deception. Such proof, however, is not necessary. The question is whether the natural and probable result of the use by the defendants of its label will be the deception of the ordinary purchaser, making his purchases under ordinary conditions—whether there is a degree of similarity calculated to deceive. * * *"

In view of defendant's admission that he is using and intends to use the emblem, "Safety Scout," on articles of clothing, merchandise and products, there is no triable issue. The plaintiff, therefore, is entitled to both a summary judgment and a permanent injunction in accordance with this decision.

In view of the granting of the plaintiffs' motion, the defendant's motion to dismiss the complaint has become academic and is denied.

Submit an order on or before July 29, 1960, in accordance with this opinion.