The **AMERICAN NATIONAL THEATRE AND ACADEMY,** Plaintiff,

v.

The **AMERICAN NATIONAL THEATRE INC.,** Defendant.

**No. 05 Civ. 4535(JGK).**

United States District Court, S.D. New York.

Sept. 27, 2006.

Arlana S. Cohen, Eric Joseph Shimanoff, William M. Borchard, Cowan, Liebowitz & Latman, P.C., New York, NY, for Plaintiff.

Claudia Elizabeth Ray, O'Melveny & Myers LLP, New York, NY.

Dale Margaret Cendali, O'Melveny & Myers LLP, Howard L. Blau, Blau, Kayman & Barrows, Jenifer Dewolf Paine, Proskauer Rose LLP, New York, NY, for Defendants.

### OPINION & ORDER

KOELTL, District Judge.

The American National Theatre and Academy ("ANTA") brought this action seeking, in part, to enjoin the defendant from using the name "The American National Theatre Inc." ("ANT"). In Count One of its First Amended Complaint, the plaintiff asserts that the defendant's use of the name "The American National Theatre Inc." violates ANTA's exclusive right pursuant to 36 U.S.C. § 21904. ANTA has moved for partial summary judgment dismissing this claim.[1]

The sole question presented here is whether § 21904, which grants the plaintiff the "exclusive right to use the name 'The American National Theater and Academy,'" prevents the defendant from using the name "The American National Theatre Inc." For the reasons stated below, the Court finds that it does not.

### I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the

---

**1.** ANTA also brought claims for false designation of origin under the Lanham Act (Count Two), interference with prospective economic advantage (Count Three), and breach of contract (Count Four). ANTA has not sought summary judgment on those claims. In a separate motion, ANT has moved to dismiss Counts Three and Four. That motion is the subject of a separate opinion.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). "[T] he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224. Based on the undisputed facts, the plaintiff has failed to show that it is entitled to judgment as a matter of law.

## II.

The following material facts are undisputed. The American National Theater and Academy is a nonprofit organization, which was incorporated by an act of Congress in 1935.[2] Act of July 5, 1935, Pub.L. No. 74–199, 49 Stat. 458 (the "Act") (Ex. A to Decl. of William M. Borchard, June 28, 2005 ("Borchard Decl.")). The Act granted to the corporation, the plaintiff ANTA, "the sole and exclusive right to have and to use in carrying out its purposes the name 'The American National Theater and Academy.'"[3] § 5. As codified and later amended,[4] the grant provides: "The corporation and its State and local branches and subdivisions have the exclusive right to use the name 'The American National Theater and Academy.'" 36 U.S.C. § 21904.

On or about June 12, 2003, the defendant organized a New York nonprofit corporation under the name "The American National Theatre Inc." (Plaintiff's Statement of Undisputed Facts ("Pl.'s Stmt.") ¶ 9; Defendant's Rule 56.1 Counterstatement of Undisputed Facts ("Def.'s Stmt.") ¶ 9.) The defendant, ANT, is unrelated to ANTA and has not obtained ANTA' s permission to use its name. (Pl.'s Stmt. ¶ 10; Def.'s Stmt. ¶ 10.) ANTA brought this action seeking, in part, a permanent and preliminary injunction restraining ANT from using the name "The American National Theatre Inc." or the acronym "ANT." (*See* Am. Compl. at 7.)

## III.

ANTA argues that its "exclusive right to use the name 'The American National The-

---

2. Title 36 of the United States Code contains some 100 such congressionally chartered nonprofit organizations. *See* Ronald C. Moe, *CRS Report for Congress: Congressionally Chartered Nonprofit Organizations ("Title 36 Corporations"): What They Are and How Congress Treats Them,* April 8, 2004, at 1. There is no general federal law of incorporation. *Id.* at 2. The creation of a federally chartered corporation thus requires a specific congressional act, such as the one at issue here. *See id.*

3. As stated, the name of the corporation created by the Act is "The American National Theater and Academy." § 1. Yet the plaintiff here uses a spelling variation of "theater" and refers to itself as "The American National Theatre and Academy." The defendant also uses the spelling "theatre" with its name. The spelling "theater," as opposed to "theatre," was dropped in Britain between 1720 and 1750 but was either retained or revived in the United States. *See* Oxford English Dictionary Online, http://www.oed.com/ (search for "theatre" or "theater") (from the 2d print ed.1989). Both parties ignore this fact.

4. The part of the charter that grants ANTA's exclusive naming right was amended by an Act of Aug. 12, 1998, Pub.L. No. 105–225, 112 Stat. 1253 (1998) (Ex. E to Borchard Decl.). This Act, as the plaintiff notes, purported to revise the charters of various Title 36 corporations without substantive change. The defendant has raised no argument to the contrary.

ater and Academy,'" 36 U.S.C. § 21904, prevents ANT from using the name "The American National Theatre Inc." ANT responds that the statute bars only the use of identical names, and the statute thus does not exclude its non-identical name or its use of the initials "ANT" as an acronym.

■ "[T]he 'starting point in every case involving construction of a statute is the language itself.'" *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 528, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (alterations in original) (quoting *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)). Where the language of the statute is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

■ Again, the statute provides ANTA with the "exclusive right to use the name 'The American National Theater and Academy.'" 36 U.S.C. § 21904. The statute's language is plain. ANTA has the exclusive right to use the precise name appearing within the quotation marks: "The American National Theater and Academy." The statute does not also provide ANTA with an exclusive right to the name "The American National Theatre," nor does it extend ANTA's exclusive right to the initials "ANT." Based on the statute's plain language, ANTA's right extends to the precise name appearing within the quotation marks, nothing more, and nothing less.

In *Blinded Veterans Assoc. v. Blinded Am. Veterans Foundation*, 872 F.2d 1035 (1989), the District of Columbia Circuit Court of Appeals confronted a nearly identical issue. In that case, the Blinded Vet-

erans Association ("BVA") sought to prevent the Blinded American Veterans Foundation ("BAVF") from using the words "blinded" and "veterans" in its name and the initials "BAV" as an acronym. *Blinded Veterans*, 872 F.2d at 1036. Among other claims, BVA argued that its congressional charter, which provided it "the sole and exclusive right to have and use in carrying out its purposes the name Blinded Veterans Association and such seals, emblems, and badges as the corporation may lawfully adopt" prevented an organization such as BAVF from "using a confusingly similar name or logo." *See id.* at 1042 (citing 36 U.S.C. § 867 (1982)).

Writing for the panel, then-Judge Ginsburg concluded that the statute granted BVA exclusive rights only to the name "Blinded Veterans Association" (as well as the specific symbols that BVA adopted). *Id.* Judge Ginsburg explained:

> BVA's charter does not extend to the words "blinded veterans" any more than it does to the individual words "blinded," "veterans," or "association." Given the clarity of the confined statutory language, unclouded by the sparse legislative history, we find no basis for believing that Congress intended the scope of the charter to extend beyond its literal terms.

*Id.* (internal citation omitted).

The same general principle applies to the plain language of the statute at issue here. ANTA's charter does not extend exclusive rights to the name "American National Theatre," any more than it extends to the initials "ANT," or the words "American," "national," or "theatre."

■ The plaintiff argues that the reference in *Blinded Veterans* to the "sparse legislative history" shows that the decision in that case was not based on the plain language alone. Even where the language

of a statute is plain, a court may nonetheless consider the legislative history to determine whether there is a "clearly expressed legislative intent contrary to the plain language" of the statute. *See Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) (quotation marks and alterations omitted). The plaintiff, however, has failed to demonstrate a clearly expressed legislative intent contrary to the plain language of the exclusive naming right created by its charter.

The only aspect of the legislative history that the plaintiff points to is a statement by a supporter of the Act and an initial member of ANTA. *See An Act to Incorporate the American National Theater and Academy: Hearing on H.R. 8214 Before the House Comm. on the Judiciary,* 74th Cong. 14–23 (1st Sess.1935) (hereinafter "House Hearing") (statement of J. Howard Reber) (Ex. C to Borchard Decl.) In arguing for a federal charter for ANTA, Reber stated that he was in part concerned that "[s]ome person, taking advantage of [the] situation, will start a similar corporation under a similar name" in various states. *Id.* at 14. The plaintiff then speculates that by granting ANTA's charter, Congress implicitly expressed its intent to address Reber's concern through the grant of a broad exclusive naming right.

The plaintiff's argument fails for several reasons. First, the plaintiff relies on the single statement of an interested citizen— not even a legislator—in support of its argument for legislative intent. Such a statement is entitled to little weight. *See, e.g., Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history."). Second, Reber also stated his concern that there would be a "dozen charters under the *same name* scattered all over the United

States." House Hearing at 14 (emphasis added). The plain language of the statute presently addresses this second concern. In any event, these statements do not demonstrate a clearly expressed legislative intent. Thus, the plain language in this case is similarly "unclouded by the sparse legislative history." *See Blinded Veterans,* 872 F.2d at 1042.

The plaintiff attempts to distinguish *Blinded Veterans* on a second ground. The plaintiff argues that the name "Blinded American Veterans Foundation" was clearly distinct from the name "Blinded Veterans Association" because of the addition of the word "American" in the former name and the substitution of the word "foundation" for "association." The plaintiff argues that the name "The American National Theatre" identically copies the first four words of ANTA's name. Taken to the extreme, the plaintiff argues, an organization could avoid violating ANTA's exclusive naming right by merely calling itself "American National Theater and Academy" and omitting the word "The" from the beginning.

First of all, this is not such a case. The addition of the word "Academy" in the plaintiff's name is a substantial distinction between the two names. In any event, the plain language of the statute offers no basis for the Court to draw the sorts of nuanced distinctions that the plaintiff suggests. Unlike the language describing the exclusive naming rights in other congressional charters, this statute contains no language suggesting that the exclusive naming right extends to identical subsets or derivations of the name contained in quotation marks. *Cf.* 36 U.S.C. § 21705 (granting the exclusive right to use the name "The American Legion" or "American Legion"); 36 U.S.C. § 22306 (granting the American Symphony Orchestra League the exclusive right to use "words

or phrases required to carry out the duties and powers of the corporation"); 36 U.S.C. § 30106 (granting the "exclusive right to use the names 'The Big Brothers of America, Big Sisters International, Incorporated,' 'Big Sisters of America,' 'Big Brothers,' 'Big Sisters,' 'Big Brothers—Big Sisters of America,' and 'Big Sisters—Big Brothers'...."). Absent any language indicating that ANTA's exclusive naming right should extend to derivations or variations, the statute cannot be read beyond its literal terms.

Finally, the plaintiff relies on two cases, *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) and *Boy Scouts of Am. v. Teal*, 374 F.Supp. 1276 (E.D.Pa.1974), to argue that federal charters granting exclusive naming rights should be construed broadly. However, neither of these cases supports the plaintiff's argument. Both cases involved the interpretation of federal charters with exclusive naming rights that granted broader protection than the statute at issue here.

In the *Olympic* case, the Supreme Court interpreted a federal charter that specifically granted the United States Olympic Committee the exclusive right to "the words 'Olympic,' 'Olympiad,' 'Citius Altius Fortius,' or any combination or simulation thereof tending to cause confusion ..." *S.F. Arts & Athletics*, 483 U.S. at 528, 107 S.Ct. 2971 (quoting 36 U.S.C. § 380(a)). The Court thus had no trouble concluding that the statute prevented San Francisco Arts & Athletics from using the word "Olympic" in connection with the "Gay Olympic Games." *Id.* at 539–40, 107 S.Ct. 2971. However, unlike the statute at issue in the *Olympic* case, ANTA's exclusive naming right contains no language suggesting that it extends protection to any individual words. *See Blinded Veterans*, 872 F.2d at 1042.

The *Boy Scouts* case involved a charter that granted the Boy Scouts "the sole and exclusive right to have and to use," among other things, the "words and phrases now or heretofore used by the Boy Scouts of America in carrying out its program." *Boy Scouts of Am.*, 374 F.Supp. at 1278 (citing 36 U.S.C. § 27). In contrast to ANTA' s charter, the Boy Scout's charter extended the exclusive naming right to "words and phrases," thus creating substantially broader protection for the Boy Scouts' name.[5]

In sum, based on the plain language of the statute, the statute does not extend beyond its literal terms and protects only the plaintiff's exclusive right to use the name "The American National Theater and Academy." Therefore, the statute does not preclude the defendant from using the name "The American National Theatre Inc." or the initials "ANT."

## CONCLUSION

For the reasons explained above, The American National Theatre and Academy's

---

**5.** Congress passed the charter of the Boy Scouts of America on June 15, 1916, well before ANTA was created. *See* An Act to Incorporate the Boy Scouts of America, Pub.L. No. 64–94, § 7, 39 Stat. 228 (1916) (codified as amended at 36 U.S.C. § 30905). Thus, at the time ANTA was created, Congress was on notice—based on the Boy Scouts' charter—of the sort of language it could use to grant a broad exclusive naming right if it so intended. *See* House Hearing 6 (statement of T.S. Settle) ("We have gone over this bill section by section.... It incorporates practically all of the good features of the American Red Cross and the other national charters that this body has passed from time to time ..."). That Congress did not include such language is some indication that Congress did not intend to extend the protection granted by the statute beyond its literal terms.

motion for partial summary judgment (Doc. # 16) is **denied**.

**SO ORDERED.**