Edward R. Koch, J.
The certificate of incorporation of the “ Boy Explorers of America, Inc.,” has been submitted to me for approval, pursuant to article 2 of the Membership Corpora *115 tions Law. The purpose of the proposed corporation is “to present a program that is theoretically romantic, and yet practical enough for the thousands of boys living in our cities and towns throughout the country, to enable them to enjoy to some degree those experiences which are familiar to professional explorers; and to develop in each member the attitude that life is an expedition on which all unfamiliar fields are his to explore.”
That the objectives of the proposed corporation are commendable and its sponsors well intentioned may be conceded.
The fact that the aims of the proposed corporation are lawful is not alone sufficient for judicial sanction as a matter of course. The approval of a Justice of the Supreme Court as required by statute (Membership Corporations Law, § 10) does not involve simply the performance of a ministerial act, but the exercise of a judicial function to decide whether the special privilege of a corporate charter should be granted or conferred under all the circumstances surrounding the application.
By reason of its ex parte nature an application of this kind is unaccompanied by opposition on the part of those likely to be affected by the functioning of another organization of the same or similar name, or dedicated to work in the same or related fields. This circumstance requires that the Justice considering the matter must draw freely on his own knowledge and experience as well as whatever other sources of information may be available to him in determining whether the proper exercise of judicial discretion dictates approval or disapproval in any particular case.
Thus, an independent inquiry in connection with the pending application discloses that the Boy Scouts of America conducts a program of explorer scouting as a regular activity for boys or young men 15 years of age and older. This organization was incorporated in this State on February 8, 1910, and operates under a Federal charter granted by Congress on June 15, 1916. The branch of its activities known as explorer scouting was organized on April 18, 1933. The program in the field of explorer scouting “points the way to adventure * * *. It introduces young men to a wide variety of outdoor, technical, service, and social activities from which they choose what they want to explore.” (Senior Scouting Guidebook, p. 3, Copyright, 1946, by Boy Scouts of America.)
The details of this program and its objectives are more fully explained in the chapter relating to explorer scouting: “ The term Explorer suggests the adventurous pioneer life of the early American frontier. Its modern counterpart, recreational living in the outdoors, is stressed by Explorer Scouting but only as *116 one phase of the present-day frontier for the young man. Like the Air and Sea activity fields of Senior Scouting, this one also includes the exploration of hobbies and.vocations, service to the community and social development. * * # Explorer Scouts seek much of their recreation close to nature. * * * They follow the ways of the early explorers, hunters, trappers, guides, plainsmen, circuit riders, voyagers, and other pioneers. They realize, too, that there are modern frontiers of personal improvement, citizenship, and social growth. They explore hobbies and vocations, either for amusement or to investigate possible choices of a life’s work. They learn something of citizenship * * *. They grow socially, by means of self-government of their Explorer Post and through social gatherings # # ■*. Trips are well organized in advance. There is value in the planning as well as in the experiences on the expedition.” (Senior Scouting Guidebook, pp. 41-43.) The literature on explorer scouting includes official publications entitled Hints on Explorer Leadership and Explorer Leaders’ Training Course Manual for Course Leaders and Members.
The distinctive principles, program of activities, insignia, etc., of educational, charitable and benevolent associations have a right to protection under the general rule against unfair competition. (Benevolent & Protective Order of Elks v. Improved Benevolent & Protective Order of Elks of the World, 205 N. Y. 459; Salvation Army in United States v. American Salvation Army, 135 App. Div. 268.) It has been said that “ Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law.” (Celluloid Mfg. Co. v. Cellonite Mfg. Co., 32 F. 94, 97.) Though the court in that case was speaking of unlawful imitation in the use of a corporate name adopted for the purpose of trade or business, the same considerations apply in this instance and the general rule against unfair competition in the use of corporate titles is available to prevent the possibility of confusion or deception. “ [M] any corporations are created under the laws of this State which have nothing to do with trade or commerce. As they are authorized by and are the creatures of the law it would be a strange condition if the law could not protect them in that which it has encouraged them to do. * * * there is a declared purpose of preventing confusion and conflict between societies, arising out of identity or similarity of names. It is very easy to see *117 how the operations of one society would be crippled by the other” (Society of War of 1812 v. Society of War of 1812 in State of New York, 46 App. Div. 568, 572; see General Corporation Law, § 9; Penal Law, § 964).
Considering the nature and circumstances of this case, it seems to me that there is a real danger that the general public might be misled and confused by the use of the name “ Boy Explorers of America, Inc.” Certainly the risk is present that this title might lead to the mistaken belief that the proposed corporation has some connection with the program of explorer scouting sponsored by the Boy Scouts of America. In any event the use of such name offers an opportunity for confounding their activities, and the impression might reasonably be created in the minds of the uninformed that the proposed corporation is representative of explorer scouting and enjoys the official sanction of the parent organization.
On another occasion a somewhat similar question was considered by the Attorney-General of the State of New York in connection with the filing of a proposed certificate of incorporation for “ American Naval Scouts, Inc.” (See 1927 Atty. Gen. 225.) The question was whether such name in conjunction with the purposes of the proposed corporation was so similar to that of the Boy Scouts of America as to be calculated to deceive the public into believing that the enterprise was associated with that organization or had its indorsement. The conclusion was reached that such name was likely to mislead and deceive, and the Attorney-General wrote as follows (p. 227):
“I think it may be noticed that the Boy Scouts of America stand in a class by themselves; that the words ‘ Boy Scouts ’ or ‘ Scouts ’ have attained a secondary meaning, well understood by the public to identify the Boy Scouts of America; that there is danger of injury and confusion if other organizations are allowed to be set up with the use of such words as part of their title.
‘ ‘ That the Boy Scouts of America have a national status is a matter of record. Their relationship to the national government is similar in kind, if less in degree, to that of the Bed Cross, and it may be believed that its leadership is of the same high character and motive.
‘‘ In the Federal charter referred to above, being such a grant as Congress has made only to the American Bed Cross and one other organization, it was provided in section 7 that: ‘ Said corporation shall have the sole and exclusive right to have and use,. in carrying out its purposes, all emblems and badges, descriptive *118 or designating marks, and words or phrases now or heretofore used by the Boy Sconts of America in carrying out its program.’
“ In the report of the Judiciary Committee of the House of Representatives, accompanying this measure, it was stated that: ( The passing by Congress of this bill will, it is believed, provide the organization with proper protection for its distinctive insignia, the integrity of which is essential to the maintenance of the movement, and protect it from those who are seeking to profit by the good repute and high standing and popularity of the Scout movement by imitating it in name alone.’ ” (Italics in original.)
The burden of this opinion of the Attorney-General is to favor the Boy Scouts of America in the enjoyment of titles, characters, words and phrases previously used by that organization. The broad principle on which it rests can readily be applied in this instance to prevent infringement on the use of the term “ explorer ” descriptive of explorer scouting since its formation as a regular field of Boy Scout activity in 1933.
It is manifest that the objects of the proposed corporation, though broadly stated, are substantially similar to the purposes and program of the Boy Scouts of America in that branch of its activity devoted to explorer scouting. The field of labor and sources of support are much the same. Nor is it apparent what this group can add to the program of explorer scouting as conducted by the Boy Scouts of America that will be of such interest or benefit as to attract boys or young men not presently touched by the appeal of the organization of long standing. The activities of that organization receive wide publicity and meet with universal favor. It collects substantial sums from a generous and appreciative public, and freely expends the same in furtherance of its general purposes for the public good. There is no reason to suppose that the proposed corporation has more to offer. Indeed, the lesson of experience is that more support for existing agencies is needed rather than a multiplication of organizations engaged in the same endeavors. It is hardly the part of wisdom to increase the number of organizations that may possibly make demand upon the bounty of the community at large for such funds as are available and to that extent deprive established agencies of needed revenue. The public interest will not be served by the economic waste and loss in efficiency that follow a duplication of effort on the part of scattered groups working toward the same end.
For the foregoing reasons the application for approval of the proposed certificate of incorporation is denied.