Foster, J.
 

 By a divided court, the complaint of the plaintiff in this action has been dismissed by the Appellate Division, First Department, on the ground that it does not state facts sufficient to constitute a cause of action. This was a reversal of the Special Term which held the complaint sufficient.
 

 In four identical causes of action the complaint alleges that plaintiff is a Delaware corporation which imports various perfumes and perfume extracts from France, and sells the same either in original packages as imported, or as toilet water which plaintiff packages in this State under labels, marks and names placed thereon for and by plaintiff, and under brand names, including
 
 ‘ ‘
 
 Arpege ’ ’ and
 
 ‘ ‘
 
 My Sin ’ ’. The complaint alleges further that the corporate defendants are purchasers of plaintiff’s toilet waters, who systematically rebottle or repackage the same in containers of one dram each and sell them at prices far less than those charged by plaintiff.
 

 On the theory that the defendants ’ alleged practice is a violation of. subdivision 6 of section 2354 of the Penal Law, plaintiff seeks an injunction and damages. This statute provides, so far as it'is material here :
 

 ‘ ‘ A person who:
 

 * # #
 

 “ 6. Knowingly sells, offers or exposes for sale, any goods which are represented in any manner, by word or deed, to be the manufacture, packing, bottling, boxing or product of any person, firm or corporation, other than himself, unless such goods are contained in the original package, box or bottle and under the labels, marks or names placed thereon by the manufacturer who is entitled to use such marks, names, brands or trade-marks; or,
 

 * # #
 

 “
 
 Is guilty of a misdemeanor ”.
 

 The containers used by the defendants bear labels which identify the contents as plaintiff’s product, and which, in addition, disclose that the contents are rebottled from the genuine
 

 
 *521
 
 product “ wholly independent of [the plaintiff] ”. The form of the labels was stipulated into the record and reads as follows, with changes appropriate to each of the corporate defendants:
 

 “LANVIN’S ARPEGE Eau de Lanvin REBOTTLED FROM THE GENUINE PRODUCT
 

 By
 

 Le Dans, Ltd.
 

 WHOLLY INDEPENDENT Of LANVIN
 

 New York, N. Y. 1 Dram ”
 

 The Appellate Division has held that the statute does not prohibit a rebottler from using the trade name of the manufecturer or original bottler, if, in addition, the rebottler indicates on the label that the product has been rebottled independent of the manufacturer or original bottler.
 

 Plaintiff argues that the statute is designed to protect both trade-mark owners and the general public from transactions fraught with the possibility of fraud and that no actual intent to deceive need be shown to constitute a violation thereof. Defendants contend that the statute was designed to prohibit actual fraud and must be read to allow their business practice involving, as it does, a full disclosure of the facts.
 

 If the statute is construed literally, the complaint clearly alleges a violation by the defendants.
 

 The evident purpose of the statute is such that it may and should be read and construed literally. We agree with the observation of the dissenting Justice below that there is no basic rule that a statute may not be read literally unless to do so would distort the intention of the Legislature.
 

 In
 
 People
 
 v.
 
 Luhrs
 
 (195 N. Y. 377) the statute here involved was analyzed by this court. A bartender had refilled an empty Wilson bottle with whiskey taken from a demijohn below the bar, and had resold the whiskey to the public. We held that his conduct violated the provisions of the statute, notwithstanding that the whiskey actually might have been of the Wilson brand.
 
 *522
 
 We specifically said that the statute was designed to prevent adulteration and substitution of “ spurious goods ” for the original with “ no probable chance ” of discovery, and to prevent
 
 ‘ ‘
 
 a kind of fraud that is easy to practice, difficult to detect and dangerous in result ”
 
 (supra,
 
 p. 382).
 

 It is true that we stressed the tacit misrepresentation inherent in the situation and pointed out that the public was led to believe that the whiskey they purchased came from the original Wilson bottle. But the violation consisted of rebottling and reselling the whiskey under the Wilson brand name, irrespective of an actual fraud.
 

 The possibility of fraud, or at least of inadvertent adulteration or dilution of the original product, is not appreciably lessened by a label on the new container acknowledging that the product has been rebottled from the original. And the rebottler nevertheless is trading upon the reputation of the owner of the trade-mark. Accordingly, no exception is made in the statute for
 
 “
 
 collateral use ” of the manufacturer’s trade-mark (cf.
 
 Guerlam, Inc.,
 
 v.
 
 Woolworth Co.,
 
 297 N. Y. 11, 19, cert. den. 332 U. S. 837).
 

 In creating this statute to prohibit transactions and business practices replete with possibilities of fraud and deception and to protect the trade-mark owner, the Legislature acted well, within the scope of its police power
 
 (People
 
 v.
 
 Weller,
 
 237 N. Y. 316, 324;
 
 People
 
 v.
 
 Beakes Dairy Co.,
 
 222 N. Y. 416, 427-428;
 
 People
 
 v.
 
 West,
 
 106 N. Y. 293, 296). No sound reasons for departing from a literal construction of the statute have been presented.
 

 ' Defendants cite
 
 Prestonettes, Inc.,
 
 v.
 
 Coty
 
 (264 U. S. 359, 368-369) in support of their position. In that case, the Supreme Court of the United States held that rebottling and reselling of perfumes by the defendant, under labels substantially similar to the labels used by defendants in the case before us, constituted no infringement of plaintiff’s federally registered trade-mark, despite the “ omnipresent possibility of fraud ” and the likelihood of spoliation. But that case was not decided under our statute, and has no bearing here.
 

 In
 
 Champion Plug Co.
 
 v.
 
 Sanders
 
 (331 U. S. 125) the Supreme Court extended the doctrine of
 
 Prestonettes
 
 to rule out unfair competition, but again our statute was not involved.
 

 
 *523
 
 Significantly, the doctrine of
 
 Prestonettes
 
 has been severely criticized by the writers (e.g., Handler and Pickett, “ TradeMarks and Trade Names—An Analysis and Synthesis ”, 30 Col. L. Rev. 168, 173; Derenberg, “ Sale of Reconditioned Articles as Trade Mark Infringement ”, 32 Bulletin of United States Trade Mark Assn. [N. S.], p. 15), and by the lower Federal courts (e.g.,
 
 Bourjois, Inc.,
 
 v.
 
 Hermida Labs.,
 
 106 F. 2d 174 [3d Cir., 1939]). Thus, in
 
 Bourjois,
 
 the United States Circuit Court of Appeals said: “In that case
 
 \Prestonettes1
 
 Mr. Justice Holmes lent the prestige of his great name to a doctrine that does not appeal very greatly to the sense of fairness of the ordinary man ”.
 

 Defendants next contend that plaintiff seeks an injunction to prevent the violation of a criminal statute, and that an injunction will not lie merely to prevent a crime. But the alleged criminal acts also threaten plaintiff’s property rights, trademark, and good will, and an injunction, therefore, is available
 
 (People ex rel. Bennett
 
 v.
 
 Laman,
 
 277 N. Y. 368, 376).
 

 Finally, there is some dispute as to whether the complaint sets forth causes of action against the individual defendants simply by alleging that they are officers, ‘ ‘ and, directly or indirectly ’ ’ are owners of the corporate stock and in control of corporate activities. We feel that such allegations are sufficient in this action.
 

 The judgment of the Appellate Division should be reversed and the motion to dismiss the complaint should be denied, with costs.
 

 Judges Dye, Froessel, Van Voorhts and Burke concur with Judge Foster; Chief Judge Desmond and Judge Fuld dissent and vote to affirm upon the majority opinion below.
 

 Judgment reversed, with costs in this court and in the Appellate Division, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.