**GIRL SCOUTS OF THE UNITED STATES OF AMERICA,**
Plaintiff,

v.

**PERSONALITY POSTERS MFG. CO.,**
Inc., Defendant.

No. 69 Civ. 3428.

United States District Court
S. D. New York.

Oct. 9, 1969.

**1230**

Nims, Halliday, Whitman, Howes & Collison, New York City, for plaintiff.

Alexander Blumenthal, New York City, for defendant.

## MEMORANDUM

LASKER, District Judge.

Girl Scouts of the United States of America ("Girl Scouts") moves for a preliminary injunction enjoining the defendant, Personality Posters Mfg. Co., Inc. ("Personality") from various acts [1] which, concisely stated, include printing, distributing and selling a poster produced by the defendant using the Girl Scouts trademarks, or components thereof, or insignia, emblems or badges. Jurisdiction is predicated on 15 U.S.C. §§ 1114, 1125(a); 36 U.S.C. § 36; and 28 U.S.C. § 1338.

"Girl Scouts" is a nonprofit, nonpolitical, nonsectarian character-building organization open to girls from seven through seventeen years of age. Its purpose is to promote the virtues of truth, loyalty, purity and patriotism, and its present membership exceeds 3,750,-000 people, including 600,000 adult leaders. Defendant, "Personality", is en-gaged in the printing and distribution of posters of various kinds. For a period of about three months prior to the filing of this action, Personality distributed the poster which is the subject of the Girl Scouts' complaint. It consists of a smiling girl dressed in the well-known green uniform of the Junior Girl Scouts, with her hands clasped above her protruding, clearly pregnant abdomen. The caveat "BE PREPARED" appears next to her hands.

■ The general principles governing the issuance of preliminary injunctions requires that the moving party must establish the probability of its prevailing on the merits and its irreparable injury in the absence of injunctive relief. Symington Wayne Corp. v. Dresser Industries, Inc., 383 F.2d 840 (2d Cir., 1967). On the record before the court, the plaintiff has failed to sustain its burden either that it will probably prevail on the merits at trial or that it will be irreparably injured unless an injunction is granted. Accordingly, the motion is denied.

The plaintiff pleads six causes of action, five of which form the basis for this motion. These are analyzed separately below.

■■ The first cause of action asserts a violation of Section 43(a) of the Trademark Act of 1946, the Lanham Act, 15 U.S.C. § 1125(a), which states:

"Any person who shall affix * * * a false designation of origin, or any

---

1. The motion requests that the defendant be preliminarily enjoined

    (a) from printing, reprinting, publishing, offering for sale or selling any copy of the poster marked Plaintiff's Exhibit 1;

    (b) from using in any manner the mark GIRL SCOUTS with letters G S and trefoil design, alone or in combination, or any word, words or design similar thereto on or in connection with the printing, reprinting, publishing, offering for sale or sale of any merchandise not plaintiff's;

    (c) from using in connection with the manufacturing, advertising or selling of any merchandise not plaintiff's any emblems, badges, descriptive or designat-ing marks, words or phrases or any one or more of the official GIRL SCOUT uniforms now or heretofore used by plaintiff or its predecessors;

    (d) from passing off or inducing or enabling others to sell or pass off any merchandise not plaintiff's as and for plaintiff's; and

    (e) from committing any other act or acts which induce or are calculated to induce the belief that any merchandise not of plaintiff's manufacture is of plaintiff's manufacture or is sponsored or approved by plaintiff or authorized to bear emblems, badges, descriptive or designating marks, words or phrases now or heretofore used by plaintiff or its predecessors.

false description, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce * * * shall be liable to a civil action by any person * * who believes that he is or is likely to be damaged by the use of any such false description or representation."

Plaintiff contends that defendant has violated the statute by designating falsely the origin of his poster in misappropriating distinguishing characteristics of the plaintiff, viz., its trademark consisting of the words GIRL SCOUTS with letters G S and trefoil design, its slogan ("BE PREPARED"), and its official uniform (including affixation of the organization's name, a regional emblem, and a local branch number). Plaintiff is anxiously concerned that viewers of the poster will believe it was disseminated by the Girl Scouts themselves. To invoke the statute, and to warrant injunctive relief, the plaintiff must establish that "the defendant's goods are likely to be thought to have originated with, or to have been sponsored by, the true owner of the mark." Societe Comptoir De L'Industrie, etc. v. Alexander's Department Stores, Inc., 299 F.2d 33, 36, 1 A.L.R. 3d 752 (2d Cir., 1962, opinion of Judge Smith). Plaintiff must demonstrate that the false representations, if any, have a tendency to deceive. Geisel v. Poynter Products, Inc., 283 F.Supp. 261, 268 (S.D.N.Y., 1968). "A showing of the likelihood of customer confusion as to the source of the goods is sufficient." Geisel, supra, at 267.

█ Plaintiff has failed utterly to establish the requisite element of customer confusion. The only evidence which it has put before the court consists of the affidavit of J. Bruce D'Adamo, director of the National Equipment Service Department of the Girl Scouts, which, although replete with information as to the activities and worthy objectives of the organization, contains no facts whatsoever indicating that anyone, whether a member of the public or of the large body of supporters of the Girl Scouts, has been confused in any way as to the origin of the offending poster or that a likelihood of confusion exists. Even if we hypothesize that some viewers might at first blush believe that the subject of the poster is actually a pregnant Girl Scout, it is highly doubtful that any such impression would be more than momentary or that any viewer would conclude that the Girl Scouts had printed or distributed the poster. But it is the role of the court to rule on evidence, not on hypothesis; and of evidence not a scintilla has been presented supporting the allegation of confusion or its likelihood. It is true that plaintiff has established that the Girl Scouts distributes its own posters, but it does so through its own local councils and various civic organizations, not through any of the commercial outlets used by defendant, such as book stores, stationery stores, campus bookshops, or through mail orders. Plaintiff's affidavit goes no further than to state that "Plaintiff has received telephone calls from members of the public expressing their indignation concerning defendant's said poster"; but indignation is not confusion. To the contrary, the indignation of those who have called would appear to make it clear that they feel that the Girl Scouts are being unfairly put upon, not that the Girl Scouts are the manufacturers or distributors of the object of indignation.

Furthermore, although perhaps of marginal importance, it should be noted that the name of the defendant does, albeit in regrettably small type, appear on the poster. Thus, unlike the situation which might exist if a pernicious defendant attempted to sell the delicious and well-known Girl Scout cookies door to door in cartons covered by a picture of the Girl Scouts, here no evidence has been presented, and rational analysis of the situation does not indicate a likelihood that the public will believe that the Girl Scouts are the authors of the poster to which they understandably take such violent exception.

██ Plaintiff's second cause of action alleges that the defendant has vio-

lated 36 U.S.C. § 36. This statute, which is part of a series relating to the incorporation of the Girl Scouts, grants to plaintiff "the sole and exclusive right to have, and to use, in carrying out its purposes, all emblems and badges, descriptive or designating marks, and words or phrases" of its predecessor corporation. There are no reported decisions directly construing and applying this provision of the statute incorporating plaintiff. A review of the legislative history of the statute makes it clear, however, that the purpose of Congress in incorporating the Girl Scouts was only to bestow public honor and recognition on the works of the organization, not to protect it inviolable from the lampooning use of its name, motto and insignia. Senate Report No. 1321 (1950 U.S.Code Cong.Serv. p. 1983) reads in its entirety as follows:

> "Because congressional charters are granted as marks of distinction to organizations whose public service is unique in scope and value, the friends of Girl Scouting believe that the deserved prestige of such a charter should be conferred on the Girl Scouts of the U. S. As the world's largest democratic youth movement for girls, the Girl Scout organization has proved its value to the community and to the Nation through nearly 38 years of ever-increasing service. Founded on March 12, 1912, with one troop of 11 girls, the movement has expanded every year since until today almost 350,000 adult volunteers are helping more than a million girl members participate in current civic welfare projects and prepare themselves for citizenship in the American democracy. We feel, therefore, that it is particularly appropriate for Congress to grant a charter to the Girl Scouts at this time, in recognition of the principles for which the movement stands as well as for its achievements. Considera-

tion of this measure in the present session of Congress is requested because the Girl Scout thirty-eighth birthday on March 12 would provide an opportunity to confer this recognition at a most appropriate occasion."

■ It should be stressed that the statute itself, 36 U.S.C. § 36, grants the Girl Scouts "the sole and exclusive right" to have and use its emblems, badges, marks, etc. *"in carrying out its purposes,"* and it is reasonable to conclude that by the use of that qualifying phrase Congress intended only to protect the public and the Girl Scouts from the confusing or illegitimate use of plaintiff's symbols by those who might compete with it in its normal purposes and endeavors.[2] The defendant here, of course, does not qualify as such a competitor.

This conclusion as to the Congressional purpose in enacting 36 U.S.C. § 36 is fortified by the Report of the House of Representatives (House Report No. 130, 64 Cong. 1st Session), relating to the legislation which incorporated the Boy Scouts of America. There the Congressional emphasis clearly centers only on public recognition and honor of the organization and the protection of its normal scouting activities. For example, the Report states:

> "The importance and magnitude of its [Boy Scouts of America's] work is such as entitle it to recognition and its work and insignia to protection by Federal incorporation.

> "The scout scheme is based upon the methods involved in educating the boy. It is a scheme of placing the boy on honor. In addition to requiring him to live up to a standard or code of laws, which insures development of character along proper lines, it requires him to study in order to pass certain tests of qualification. The passing of these various tests is recognized by the

---

**2.** As, for example, in In the Matter of Boy Explorers of America, Inc., 21 Misc. 2d 114, 67 N.Y.S.2d 108, where the New York State Supreme Court declined to approve the certificate of incorporation of an organization of which both name and purposes were substantially similar to those of the Boy Scouts of America.

award of appropriate badges or medals and insignia.

"If any boy can secure these badges without meeting the required tests, the badges will soon be meaningless, and one of the leading features of the scout program will be lost. Likewise, with the uniform which designates the scout."

■ Plaintiff's third cause of action alleges that the defendant has infringed plaintiff's common law trademark rights and its registered trademarks. 15 U.S. C. § 1114(1) protects the holder of a registered mark. (In this case plaintiff has a registered mark consisting of the words GIRL SCOUTS with letters G S and trefoil design.) By the terms of Section 1114(1), recovery thereunder by the holder of a registered mark is predicated upon a showing of confusion, mistake or deception in the use of any colorable imitation of the mark. 15 U.S.C. § 1127 codifies the common law of trademark rights by stating that the intention of Chapter 22 (Trademarks) of Title 15 of the United States Code is to regulate commerce by

"making actionable the deceptive and misleading use of marks * * * [and] to prevent fraud and deception * * * by the use of * * * colorable imitations of registered marks * * *."

As the language indicates,

"Common law unfair competition must be grounded in either deception or appropriation of the exclusive property of the plaintiff." Societe Comptoir De L'Industrie, etc. v. Alexander's Department Stores, supra, 299 F.2d at 36.

See also Smith v. Chanel, Inc., 402 F.2d 562, 570 (9th Cir., 1968).

Since, as indicated above, no evidence has been presented that the requisite confusion or deception exists, no injunction can be granted on the grounds alleged in the third cause of action.

■ Plaintiff's fourth cause of action alleges a violation of New York General Business Law, McKinney's Consol. Laws, c. 20, § 368–d, which states:

"Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement or a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

Despite the seeming intention of this statute to confer protection where the federal Lanham Act might not, viz., even where there is no confusion as to the origin of the goods, the courts have denied relief where confusion is absent. Haviland & Co. v. Johann Haviland China Corporation, 269 F.Supp. 928, 957 (S. D.N.Y., 1967, opinion of Judge Palmieri); Field Enterprises Educational Corp. v. Grosset & Dunlap, Inc., 256 F. Supp. 382, 390–391 (S.D.N.Y., 1966, opinion of Judge Bonsal); Jean Patou, Inc. v. Jacqueline Cochran, Inc., 201 F.Supp. 861, 866 (S.D.N.Y., 1962, opinion of Judge Bonsal),[3] aff'd 312 F.2d 125 (2d Cir., 1963). See also Cue Publishing Co. v. Colgate-Palmolive Co., 45 Misc.2d 161, 256 N.Y.S.2d 239, 245–256, aff'd 23 A.D.2d 829, 259 N.Y.S.2d 377 (1965), in which the New York State Supreme

---

3. Bonsal, D. J. (201 F.Supp. p. 866): "The vice to be avoided is the 'likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark * * notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.'

"The doctrine has been given little weight in the Second Circuit. Avon Shoe Co. v. David Crystal, Inc., 171 F.Supp. 293, 299 (S.D.N.Y.1959), aff'd 279 F.2d 607 (2d Cir.), cert. denied, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960)."

Court observed of the so-called "dilution" doctrine codified by § 368–d:

"While the right has been recognized the doctrine has been sparingly applied. * * * It would appear therefore, and the cases have so held, that to give effect to the dilution doctrine some measure of confusion must be present and in those cases where it was found to exist the rights of the senior user were upheld." (Citations omitted.) 256 N.Y.S.2d at 245.

In the light of these decisions construing § 368–d and of the lack of any evidence before the court establishing confusion, no injunction can be granted on the basis of the fourth cause of action.

■ Plaintiff's fifth cause of action alleges a violation of New York General Business Law § 279–n, which classifies certain trademark offenses as misdemeanors. Although under some circumstances injunctive relief may be available under this statute, (see, e. g., Lanvin Parfums, Inc. v. Le Dans, Ltd., 9 N.Y.2d 516, 215 N.Y.S.2d 257, 174 N.E.2d 920 (Ct. of Appeals, N.Y., 1961), cert. den. 368 U.S. 834, 82 S.Ct. 58, 7 L.Ed.2d 35), those circumstances are not present here, where no evidence of fraudulent intent to deceive on the part of defendant has even been offered, much less shown likely to be proven. Hence, no injunction should ensue on the fifth cause of action.

■ Plaintiff's sixth cause of action alleges defamation. It contends that defendant's poster is intended to impute unchastity and moral turpitude to members of plaintiff, to hold plaintiff up to ridicule and contempt, and to suggest that plaintiff's motto "BE PREPARED" encourages the practice of contraception. Again, however, these strong allegations are bald allegations, and the record is bare of any evidence that plaintiff's reputation has been or is likely to be affected in any way by the wry, perhaps unmannerly, behavior of the defendant. No showing has been made here which would constitute the special circumstances in the absence of which a court of equity will not enjoin or restrain literary or spoken material. See Konigsberg v. Time, Inc., 288 F.Supp. 989 (S.D.N.Y., 1968), in which Judge Pollack observed:

"To enjoin any publication, no matter how libelous, would be repugnant to the First Amendment to the Constitution, Crosby v. Bradstreet Co., 312 F.2d 483 (2d Cir. 1963); Parker v. Columbia Broadcasting System, Inc., 320 F.2d 937 (2d Cir. 1963); cf. Near v. State of Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), and to historic principles of equity. American Malting Co. v. Keitel, 209 F. 351 (C.C.A.2, 1913)."

■ Finally, the Girl Scouts contend that defendant's poster violates Section 397 of the New York General Business Law, which makes unlawful the unauthorized use for purposes of trade of the

"name, symbol, device or other identification of any non-profit corporation * * * or organization organized exclusively for * * * benevolent purposes."

Although the plaintiff did not invoke this statute in its complaint, the court deals with the claim at this time in the interest of resolving all of plaintiff's contentions.

The leading case construing this statute is University of Notre Dame du Lac v. Twentieth Century-Fox Film Corp., 22 A.D.2d 452, 256 N.Y.S.2d 301 (Supreme Ct. of N. Y. Appellate Division, First Dept. 1965), aff'd 15 N.Y.2d 940, 259 N.Y.S.2d 832, 207 N.E.2d 508 (1965). There a unanimous court, for which Presiding Justice Botein wrote, denied injunctive relief to the plaintiff University, which sought to restrain the distribution of a motion picture satirizing it by name. The observation of Justice Botein (256 N.Y.S.2d 305) is pertinent:

"Under section 397 of the General Business Law, added by L. 1961, c. 438, a nonprofit corporation such as the University may restrain the use of

its name for advertising purposes or for purposes of trade. We are offered no convincing rebuttal of defendants' contention that this legislation was *mainly designed to operate in connection with the sale of goods and services,* and in our view a situation like the present was remote from the Legislature's contemplation.[4] (Emphasis added.)

As in the *Notre Dame* case (at 307), so here:

"At bottom, it seems to us, the [plaintiff's] grievance * * * sounds in defamation and its remedy, if it can prove libel, is at law."

However, even if it were assumed that Section 397 is meant to protect nonprofit corporations from unfair use of its slogans and insignia without requiring proof of deception or palming off, the defendant's brand of visual humor does not fall within Section 397's ambit. To rule that Section 397 prohibited defendant from publishing or distributing its poster would constitute an infringement of that right of satirical expression "deserving of substantial freedom—both as entertainment and as a form of social * * * criticism" referred to in Berlin v. E. C. Publications, Inc., 329 F.2d 541, 545, 9 A.L.R.3d 612 (2d Cir., 1964), cert. den. 379 U.S. 822, 85 S.Ct. 46, 13 L.Ed.2d 33. Although for the reasons stated above it is not necessary to invoke the constitutional dimensions of the First Amendment in order to deny the injunction requested here, it is relevant to note in this regard that at least one New York court has found posters to be a form of expression which may be constitutionally protected. Paulsen v. Personality Posters, Inc., 59 Misc.2d 444, 299 N.Y.S.2d 501, 508 (Supreme Ct. of N.Y., 1968).

Even if none of these considerations were valid, it would be necessary to deny preliminary injunctive relief since the plaintiff has offered no evidence of irreparable harm to it in the present situation, whereas the granting of an injunction would obviously injure the defendant. On this point plaintiff's supporting affidavit states merely:

"18. Because, as set out above, millions of girls, their parents, relatives, neighbors and friends are familiar with the purposes of the GIRL SCOUT program and are familiar with the GIRL SCOUT uniforms, plaintiff's reputation will be and has been irreparably damaged by defendant's poster depicting a pregnant girl wearing the official JUNIOR GIRL SCOUT uniform and prominently featuring the GIRL SCOUT motto "BE PREPARED".

This conclusory statement is notably inadequate to support the granting of such drastic relief as a preliminary injunction against the publication or distribution of an item of communication. No evidence is found anywhere in the record before the court that the poster has to date damaged the plaintiff in any way. No facts are presented to show that contributions to the organization have fallen off, that members have resigned, that recruits have failed to join, that sales either of plaintiff's posters or other items have decreased, or that voluntary workers have dissociated themselves or declined to support the honorable work of the organization.

Those who may be amused at the poster presumably never viewed the reputation of the plaintiff as being inviolable. Those who are indignant obviously continue to respect it. Perhaps it is because the rep-

4. In a footnote at this point, Justice Botein quotes with approval Klein, Is Unauthorized Use of Titles of Artistic Works in Unrelated Fields Actionable Piracy?, 28 Brookyln L.Rev. 59, note 1, which stated:
"If the trend had been allowed to continue, he warned, 'we might soon have found such fine institutions as St. Pat-

rick's Cathedral, the Red Cross, Columbia University or the American Legion linked with diapers, liquors and fertilizers.'"
Here there is no evidence to indicate any "link" with defendant's product, but, to the contrary, every reason to believe that plaintiff is in no way "linked" with it.

utation of the plaintiff is so secure against the wry assault of the defendant that no such damage has been demonstrated.

For the reasons stated above the motion for a preliminary injunction is denied.

It is so ordered.