**LIGHTHAWK, THE ENVIRONMENTAL AIR FORCE, a non-profit corporation, Plaintiff,**

v.

**F. Dale ROBERTSON, in his official capacity as Chief of the U.S. Forest Service, an agency of the United States; and the U.S. Forest Service, an agency of the United States, Defendants.**

No. C92–1237D.

United States District Court,
W.D. Washington,
at Seattle.

Feb. 8, 1993.

John Wentworth Phillips, Heller, Ehrman, White & McAuliffe, Todd D. True, Victor M. Sher, Sierra Club Legal Defense Fund, Seattle, WA, for Lighthawk.

Christopher Lee Pickrell, U.S. Attorney's Office, Seattle, WA, Shawn Bertram Jensen, U.S. Dept. of Justice, Washington, DC, for F. Dale Robertson & Forest Service.

## ORDER

DIMMICK, District Judge.

Plaintiff LightHawk, the Environmental Air Force ("LightHawk") is a small environmental organization that has sued the Chief of the United States Forest Service ("Forest Service") in a declaratory judgment action. LightHawk claims that the Forest Service cannot prevent it from publishing a political advertisement featuring a depiction of a chainsaw wielding Smokey Bear. Both parties have moved for summary judgment. As the proposed application of the statute and regulation authorizing the Forest Service to prohibit LightHawk from using Smokey Bear abridges the organization's First Amendment rights, summary judgment must be granted in favor of LightHawk.

## BACKGROUND

The background of this case is simple and undisputed. LightHawk ran a political advertisement in several newspapers between May 18 and May 20, 1992. The advertisement criticized the Forest Service's management of public lands, and featured a drawing of Smokey Bear with a chainsaw partially hidden behind his back. Printed below the caricature was the slogan, "Say it ain't so, Smokey." *See* attached Exhibit A.

On July 6, 1992 F. Dale Robertson, Chief of the Forest Service, sent a letter to LightHawk's Seattle office advising it to stop its unauthorized use of Smokey Bear and indicating that if the use continued LightHawk would be sued for injunctive relief. The Forest Service cited to 16 U.S.C. § 580p–4(a), which reads:

(a) Whoever, except as provided by rules and regulations issued by the Secretary, manufactures, uses, or reproduces the character "Smokey Bear" or the name "Smokey Bear" or a facsimile or simulation of such character or name in such a manner as suggests "Smokey Bear" may be enjoined from such manu-

facture, use, or reproduction at the suit of the Attorney General upon complaint by the Secretary.

This statute was enacted as part of the Conservation Act of 1974, which added the enforcement mechanism of section 580p–4(a) to the criminal sanctions that were already available to prevent the unauthorized use of Smokey Bear. 18 U.S.C. § 711.[1] The Act also indicates that "the name and character 'Smokey Bear' " were originated by the Forest Service of the United States Department of Agriculture in cooperation with the Association of State Foresters and the Advertising Council. 16 U.S.C. § 580p. Further the "name and character" Smokey Bear are declared to be "the property of the United States." 16 U.S.C. § 580p–1. Congress intended the original passage of the laws regulating use of the image of Smokey Bear to protect the government's interest in Smokey Bear so that the character's value to the campaign against forest fires would not be diminished. *See* S.Rep. No. 1128, 82nd Cong., 2nd Sess. (1952), *reprinted in* 1952 U.S.C.C.A.N. 1484–86.

The Forest Service has promulgated regulations to implement the laws protecting the Smokey Bear character. The regulation that controls non-commercial uses of Smokey Bear reads:

> The Chief [of the Forest Service] may authorize the use of *Smokey Bear* for non-commercial educational purposes, without charge, when such use is essentially as a public service, and will, in his judgment, contribute to public informa-

tion and education concerning the prevention of forest fires.[2] 36 C.F.R. § 271.3.

In response to the Forest Service's demand that it stop publishing the Smokey Bear advertisement or risk litigation, LightHawk filed this declaratory judgment action claiming that the application of the statute and regulation to the advertisement abridged LightHawk's First Amendment rights. Both sides have moved for summary judgment, and both concede that the facts are undisputed. Thus summary judgment is warranted pursuant to Fed.R.Civ.P. 56 as the Court need only decide a matter of law.

## DISCUSSION

The issue before the Court is whether the threatened application of the statute and implementing regulation affecting unauthorized non-commercial uses of the character Smokey Bear unconstitutionally abridge LightHawk's First Amendment free speech rights.[3] LightHawk believes that the Forest Service may not limit its non-commercial use of Smokey Bear because the limitation is based on the content of LightHawk's message. The Forest Service, however, claims it owns the character Smokey Bear just as it owns other forms of property, and that it may prohibit LightHawk from diminishing the value of Smokey Bear by putting it to an unauthorized use that does not further the forest fire prevention theme.

### A. *The Appropriate Level of Scrutiny*

The first question to decide in determining if the statute and regulation are uncon-

---

**1.** Section 711 reads:

Whoever, except as authorized under rules and regulations issued by the Secretary of Agriculture after consultation with the Association of State Foresters and the Advertising Council, knowingly and for profit manufactures, reproduces, or uses the character "Smokey Bear" ... shall be fined not more than $250 or imprisoned not more than six months, or both.

**2.** Authorization to use Smokey Bear for "commercial" purposes may also be granted so long as the Chief of the Forest Service determines the use "contributes to public information concern-

ing the prevention of forest fires," and the user is required to pay a "use or royalty charge." 36 C.F.R. § 271.4. Royalty fees generated from these licenses are deposited into a special account "furthering the nation-wide forest-fire prevention campaign." 16 U.S.C. § 580p–2.

**3.** In its motion for summary judgment LightHawk also claims that the statute and regulation prohibiting unauthorized non-commercial uses of Smokey Bear are facially unconstitutional. The Court will initially address the "as applied" challenge, and will then consider whether any portions of the statute and regulation at issue should be declared facially invalid.

stitutional as applied to LightHawk is what level of scrutiny to apply. Should the Court employ the level of scrutiny generally applicable to content based regulations of protected speech, or should the Court use the less stringent standard of scrutiny appropriate for examining commercial speech regulations, and time, place, and manner restrictions of speech?

LightHawk challenges 16 U.S.C. § 580p–4(a) and the implementing regulation, 36 C.F.R. § 271.3 only as they are applied to non-commercial uses. Specifically, LightHawk objects to the Forest Service attempt to limit its use of Smokey Bear in a political advertisement because that limitation as required by statute and regulation is based on the content of the advertisement. The statute prohibits the use of Smokey Bear unless authorized by regulations issued by the Secretary of Agriculture. 16 U.S.C. § 580p–4(a). The relevant regulation in turn allows the use of Smokey Bear for non-commercial purposes only when the Forest Service determines that Smokey is being used to express an appropriate message that will "contribute to public information and education concerning the prevention of forest fires." 36 C.F.R. § 271.3.

■■■■■ A statute or regulation that places a burden on speakers due to the content of their speech is "presumptively inconsistent with the First Amendment." *Simon & Schuster, Inc. v. Members of New York State Crime Victims Board,* 502 U.S. ——, ——–——, 112 S.Ct. 501, 508, 116 L.Ed.2d 476, 486–87 (1991). A content based regulation of protected speech is subject to the "most exacting scrutiny," and may be allowed only when the government can show a compelling state interest that is narrowly drawn to serve that interest. *Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988).

LightHawk urges application of the presumption against content based burdens on protected speech, and application of the most exacting scrutiny to the statute and regulation that the Forest Service threatened to use to stop their use of the character Smokey Bear. Indeed, the Supreme Court has applied these standards to find statutes unconstitutional under similar circumstances.

The Supreme Court has ruled that a statute prohibiting the reproduction of United States currency was unconstitutional because the prohibition was content based. *Regan v. Time, Inc.,* 468 U.S. 641, 644, 104 S.Ct. 3262, 3264, 82 L.Ed.2d 487 (1984). In *Regan,* Time Magazine challenged a statute that imposed criminal liability upon those who printed or reproduced a likeness of United States currency, unless this activity was "printing, publishing, or importation ... of illustrations of ... any ... obligation or other security of the United States ... for philatelic, numismatic, educational, historical, or newsworthy purposes in articles, books, journals, newspapers, or albums." 18 U.S.C. §§ 474, 504; *Regan,* 468 U.S. at 644, 104 S.Ct. at 3264. The Court found that

> [u]nder the statute, one photographic reproduction will be allowed and another disallowed solely because the Government determines that the message being conveyed in the one is newsworthy or educational while the message imparted by the other is not. The permissibility of the photograph is therefore often "dependant solely on the nature of the message being conveyed."

*Id.* at 648, 104 S.Ct. at 3267 (quoting *Carey v. Brown,* 447 U.S. 455, 461, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980)). The Court accordingly ruled that the statute was unconstitutional because "[r]egulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." *Id.*[4] The Court did not scrutinize

---

**4.** *Schacht v. United States,* 398 U.S. 58, 62–3, 90 S.Ct. 1555, 1558–59, 26 L.Ed.2d 44 (1970), is also cited by LightHawk in support of its argument. The Court held unconstitutional a statute that prohibited the wearing of military uniforms without authority, unless an actor wore a uniform in a dramatic portrayal that did not "tend to discredit" the military. The Court read this as an unconstitutional limitation of the wearing

the statute any further to justify the holding.

However, more recent Supreme Court cases have allowed further scrutiny of such regulations, which can be permitted if the government can " 'show that its regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end.' " *Simon & Schuster*, 502 U.S. at ——, 112 S.Ct. at 509, 116 L.Ed.2d at 488 (quoting *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231, 107 S.Ct. 1722, 1729, 95 L.Ed.2d 209 (1987)). In *Simon & Schuster* the Court invalidated a New York statute that required any publisher of a criminal's account of his crime to turn over profits from the publication to the State Crime Victims Board. The Court found the statute to be an unacceptable content based regulation of protected speech because the statute applied only to certain works based on the work's subject matter. *Id.* 502 U.S. at ——, 112 S.Ct. at 511–12, 116 L.Ed.2d at 491. Although the Court recognized a compelling interest in compensating crime victims, it found the statute was not narrowly tailored to achieve the state's objective. *Id.*

■ Analogously, the statute and regulation relied on by the Forest Service to prohibit LightHawk's use of Smokey Bear are clearly content based restrictions of protected speech that are presumptively invalid and subject to the most rigorous scrutiny. First, the Forest Service has threatened to apply the statute and regulation to LightHawk's political advertisement, which as a form of criticism of government policies is on the "highest rung of the hierarchy of First Amendment values." *Carey*, 447 U.S. at 467, 100 S.Ct. at 2293. The use of a cartoon like caricature of Smokey Bear to relay the message does not diminish the value of the speech involved.

> Despite their sometimes caustic nature, from the early cartoon portraying George Washington as an ass down to the present day, graphic depictions and satirical cartoons have played a prominent role in public and political debate.... From the viewpoint of history

of a uniform based on the content of the speech

it is clear that our political discourse would have been considerably poorer without them.

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 54–55, 108 S.Ct. 876, 881, 99 L.Ed.2d 41 (1988).

Second, the threatened application of the statute and regulation would prevent LightHawk's non-commercial use of Smokey Bear unless the Forest Service determined that the message to be conveyed was educational, supported public service, and conveyed the importance of preventing forest fires. 16 U.S.C. § 580p–4(a); 36 C.F.R. § 271.3. While the restriction advances worthy ideals, it is clearly a content based regulation similar to the seemingly innocuous and well-intentioned statute in *Regan* that was intended to discourage counterfeiting. *Regan*, 468 U.S. at 644, 104 S.Ct. at 3264. Thus it would seem that the statute and regulation as applied to LightHawk are presumptively invalid and subject to the highest level of scrutiny.

The Forest Service, however, argues that the prohibition against the use of Smokey Bear is not presumptively invalid, and should not be subject to the most exacting level of scrutiny under First Amendment analysis. Because the Forest Service has a legitimate property right in the character Smokey Bear, it believes that in order to demonstrate constitutionality it need only show that it has a substantial interest in limiting the use of Smokey Bear that is advanced by a prohibition on speech that is no broader than necessary. This standard was articulated in *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (hereafter *"USOC"*).

In *USOC* the Supreme Court found a statute that prohibited any unauthorized use of the word Olympic for commercial purposes to be constitutional. The statute in question read:

> [A]ny person who uses for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical

conveyed by the person wearing the uniform.

exhibition, athletic performance, or competition—

. . . . .

(4) the words "Olympic" ... tending to cause confusion, to cause mistake, to deceive or to falsely suggest a connection with ... any Olympic activity;

shall be subject to suit in a civil action ... for the remedies provided in the [Lanham Trademark] Act.

36 U.S.C. § 380(a).

The United States Olympic Committee ("Olympic Committee") had sued to enjoin a group from promoting a "Gay Olympic Games." The group promoting the Games argued that their use of the word Olympic was intended as a political statement about the status of homosexuals in society. Thus they concluded that the prohibition of their use of the term Olympic violated their First Amendment free expression rights.

The Court rejected this argument. Initially, the Court noted that the statute's regulation of the use of the term Olympic for trade or to induce sales affected only commercial speech. *USOC,* 483 U.S. at 535, 107 S.Ct. at 2980. Next, the Court explained that although the limits on the use of the term Olympic for promotion of theatrical and athletic events mainly regulated commercial speech, "some uses may go beyond the 'strictly business' context." *Id.* The Court then concluded that the use

of the word Olympic to promote the Gay Olympic Games did not go significantly beyond the strictly business context, but instead affected mostly commercial interests, with only incidental restrictions on expressive speech. Thus the statute was analyzed according to the reduced level of scrutiny applicable to commercial speech.[5] *Id.* at 536, 107 S.Ct. at 2981. This test allows that:

A restriction on nonmisleading commercial speech may be justified if the government's interest in the restriction is substantial, directly advances the government's asserted interest, and is no more extensive than necessary to serve the interest.

*Id.* at 536 n. 16, 107 S.Ct. at 2981 n. 16. The Court also indicated that "purely expressive [non-commercial] uses" of Olympic would probably not be affected by the statute. *Id.* at 536, 107 S.Ct. at 2981.[6]

Applying this reduced level of scrutiny the Court found that the government had a substantial property interest in protecting the value of the word Olympic, which had been created by the efforts of the Olympic Committee. Further, the Act's incidental restrictions on First Amendment freedoms were held to be no greater than necessary to further the government's substantial interest because the statute was limited to those areas "that would directly impinge

---

**5.** The Court also indicated that it would be applying the test for time, place, and manner restrictions enunciated in *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968), because it found this test to be "substantially similar" in application to the commercial speech test. *USOC,* 483 U.S. at 537 n. 16, 107 S.Ct. at 2981 n. 16. Under the *O'Brien* test, the Court in *USOC* asked "whether the incidental restrictions on First Amendment freedoms [were] greater than necessary to further a substantial governmental interest." *Id.* at 537, 107 S.Ct. at 2981. The *O'Brien* test is applied to regulations of conduct that combine speech and non-speech elements. Such a regulation on conduct is allowable if:

it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no great-

er than is essential to the furtherance of that interest.

*O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679. The use of the *O'Brien* test demonstrates the inappropriateness of applying the lower level of scrutiny to the Smokey Bear statute and regulation. The Smokey Bear regulatory scheme would not be covered by the *O'Brien* test because the Forest Service interest is directly related to the suppression of free expression. The statute and regulation were intended to prohibit the use of Smokey Bear to express any message other than the importance of preventing forest fires.

**6.** The Court cited a district court ruling that the statute restricting use of the term Olympic did not apply to a purely expressive poster expressing opposition to a plan to convert the Lake Placid Olympic Village into a prison. *Stop Olympic Prison v. United States Olympic Committee,* 489 F.Supp. 1112, 1118-21 (S.D.N.Y. 1980) (*S.T.O.P.*).

on the [Olympic Committee's] legitimate right to exclusive use." *Id.* at 540, 107 S.Ct. at 2983.

■ The application of the reduced level of scrutiny in *USOC*, however, does not extend to the facts in the present dispute. Section 580p–4(a) and the implementing regulation 36 C.F.R. § 271.3 do not primarily regulate commercial uses of the character Smokey Bear as in *USOC*, with only incidental restrictions on First Amendment protected speech.[7] By its terms and as applied to LightHawk's political advertisement the statute regulates all "uses" of Smokey Bear, and the regulation specifically prohibits non-commercial uses based on the content of the message in which Smokey Bear is employed.[8] Smokey cannot be used if he does not further the message of forest fire prevention. 36 C.F.R. § 271.3.

Rather than term this a regulatory scheme protecting property that incidently affects free expression,[9] the statute and regulation must be read as a restriction on speech intended to protect government property. The application of this content based statute and regulation is thus presumptively invalid, and cannot be tolerated unless the government can demonstrate a compelling interest, that is directly advanced by the statute, and that is narrowly drawn. *Simon & Schuster*, 502 U.S. at ———–––—, 112 S.Ct. at 507–08, 116 L.Ed.2d at 486–87; *Boos*, 485 U.S. at 321, 108 S.Ct. at 1164.

**B.** *Application of Most Exacting Scrutiny*

■ Pursuant to the applicable constitutional standard the statute and regulation as applied to LightHawk are presumptively invalid. "Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." *Regan*, 468 U.S. at 648–49, 104 S.Ct. at 3267 (citing *Carey*, 447 U.S. at 463, 100 S.Ct. at 2291.)

Moreover, the Forest Service cannot demonstrate a compelling government interest that is narrowly drawn such that the application of the statute and regulation could pass constitutional muster. As the Supreme Court has said, while "certain state interests may be so compelling that where no adequate alternatives exist a content-based distinction—if narrowly drawn—would be a permissible way of furthering those objectives, this is not such a case." *Carey*, 447 U.S. at 465, 100 S.Ct. at 2292.

The Forest Service claims a substantial interest "not only in protecting the Smokey Bear symbol as government property, but also the message of forest fire prevention which the symbol conveys." The Forest Service's ability to implement its goals is substantially hampered, it claims, when groups like LightHawk "exploit the 'commercial magnetism'" of the symbol Smokey Bear thereby undercutting the Forest

---

**7.** The Forest Service argues that because the Court in *USOC* cited the statutory protection afforded Smokey Bear when it noted that a statutory grant of "exclusive use of distinctive words and symbols by Congress is not unique," the lower standard of scrutiny should also be applied to the Smokey Bear statute and regulation. *USOC*, 483 U.S. at 532 n. 8, 107 S.Ct. at 2979 n. 8. However, the Court in *USOC* cited only the criminal penalty arm of the statutory enforcement scheme, 18 U.S.C. § 711, which applies only to "for profit" uses of Smokey Bear and not to non-commercial uses like that at issue in the present action.

**8.** The Forest Service also argues that the advertisement is not purely expressive speech, but is actually a form of commercial speech because it contains an invitation for interested persons to contact the LightHawk organization. This invitation does not alter the expressive nature of the

ad. When viewed in its entirety it is clear that the primary purpose of the advertisement is to express a political view. The invitation for interested people to associate with LightHawk is not prominently displayed, does not solicit membership fees or donations, and does not contain any other element that would impart commercial intentions.

**9.** The Forest Service seeks to classify the regulatory scheme as a protection of property, arguing that it has just as much right to prevent the destruction of government property like an Army Jeep, as it does to prevent the diminution of the value of Smokey Bear. This analogy is incomplete. Protecting Smokey Bear depends on the content of the message the symbol is used to convey, while protecting the Jeep is "unrelated to the suppression of free expression." *O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679.

Service's efforts to "use, and sell the right to use, the [symbol] in the future, since much of the ... value comes from its limited use." *USOC*, 483 U.S. at 539, 107 S.Ct. at 2982 (citing *Mishawaka Rubber & Wollen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1942)).

Conveying the message of forest fire prevention and maintaining the value of the character Smokey Bear to aid this effort are certainly important, but are not compelling in the context of First Amendment rights. The Forest Service interest in protecting Smokey Bear and spreading its message of forest fire prevention is no more compelling than other governmental interests that the Supreme Court has found lacking as justification for content based regulations. The Court has struck down statutes that furthered government interests in preventing counterfeiting, *Regan*, 468 U.S. at 656, 104 S.Ct. at 3271, in preventing the use of military uniforms without authorization, *Schacht*, 398 U.S. at 61, 90 S.Ct. at 1558, and in "preserving the flag as a symbol of nationhood and national unity." *Texas v. Johnson*, 491 U.S. 397, 407, 109 S.Ct. 2533, 2541, 105 L.Ed.2d 342 (1989).

The Forest Service argues that its ownership of the symbol Smokey Bear strengthens its interest in preventing unauthorized uses. The government has created much of the value of Smokey Bear through its promotional efforts. However, the government's proprietary rights do not change an important interest in protecting the value of Smokey Bear to spread the forest fire prevention theme into a compelling interest under First Amendment analysis. Accepting such an argument could open the door for the passage of other content based regulations premised merely on the government's ownership of a particular symbol. Further, the government's ownership of the symbol itself does not define the government interest. Instead, it is the goals that are served through protecting the property interest that must be weighed. The interest in protecting the value of the symbol in order to promote the forest fire

prevention theme simply does not justify this content based regulatory scheme.

Moreover, the application of the statute and regulation to LightHawk's political advertisement undermines the importance of the government interest. The use of Smokey Bear in political speech and parody is unlikely to diminish the value of Smokey Bear for forest fire prevention purposes, and so the government's interest in prohibiting the use of Smokey in political speech or parody is only marginal.

The government's property interest in the character Smokey Bear is analogous to, but admittedly broader than, that of an owner of a trademark. Under trademark law courts have uniformly ruled that non-commercial parodies and satires do not infringe legitimate trademarks because there is little chance of confusion as to sponsorship. *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Group*, 886 F.2d 490, 496 (2d Cir.1989) (court found it "hardly likely" that purchaser might mistakenly think Cliffs Notes produced Spy Notes parody).

More notably, a district court has refused to apply the statute at issue in *USOC* to prohibit the use of the term Olympic in a political poster protesting construction of a prison at the Lake Placid Olympic Village site. The court stated:

[T]he poster is not likely to be viewed as a commercial advertisement, [and] there is no danger that it will induce anyone to associate the word "Olympic" or the Olympic symbols with any goods or services not provided, sponsored or endorsed by the U.S.O.C. Nor does it appear likely that it will induce viewers to associate them with S.T.O.P. or its constituent members in such a way that it weakens their propensity to bring to mind the Olympic games or the U.S.O.C. Accordingly, the Court declines to find that plaintiff's poster has a diluting effect on defendant's marks.

*S.T.O.P.*, 489 F.Supp. at 1123. Applying a similar statute that protected the Girl Scouts another court has held that while Congress granted rights in the Girl Scouts to the emblems, badges, and designating marks of the group, the right did not "pro-

tect it inviolable from the lampooning use of its name, motto and insignia." *Girl Scouts of the United States v. Personality Posters Mfg. Co.*, 304 F.Supp. 1228, 1232 (S.D.N.Y.1969). Similarly, the satirical use of Smokey Bear to criticize Forest Service management techniques is unlikely to cause confusion or to dilute the value of Smokey Bear to help prevent forest fires. Thus the Forest Service cannot have a compelling interest in prohibiting such use.

While not necessary to the Court's ruling it is also worth noting that because LightHawk's use of the symbol is unlikely to diminish its value the statute and regulation are not sufficiently narrowly drawn. As the Forest Service stated in its brief, "[T]he use of Smokey Bear ... in the form of a satirical cartoon ... is not fatal to the Smokey Bear regulatory scheme because it is not likely to cause anyone to view that use of Smokey Bear in such a way that it 'weakens their propensity to bring to mind' the message of forest fire prevention." *See S.T.O.P.*, 489 F.Supp. at 1123; *Girl Scouts*, 304 F.Supp. at 1231. The statute and regulation could certainly have been more narrowly drawn so that the Forest Service could prohibit only those uses that would have a high propensity to weaken the value of the symbol.

Alternatively, the statute and regulation could have been written to prohibit only unauthorized commercial uses. While the application of the regulatory scheme to commercial uses is not before the Court, it appears likely under *USOC* that those provisions would be held valid. The statute and regulation, however, go too far by prohibiting all uses, whether commercial, or non-commercial and purely expressive.

## C. *Facial Challenge*

█ Having found that 16 U.S.C. § 580p–4(a) and 36 C.F.R. § 271.3 are unconstitutional as applied to LightHawk, the remaining question is whether the Court should rule the statute and regulation facially unconstitutional. LightHawk argues in its motion for summary judgment that because the statute and regulation require the Forest Service to differentiate among protected uses of Smokey Bear based on the content of the message the statute and regulation are facially unconstitutional. The argument as framed by LightHawk depends on a finding that the statute and regulation are "unconstitutional in every conceivable application." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S.Ct. 2118, 2124, 80 L.Ed.2d 772 (1984).

As no determination has been made as to the constitutionality of the application of 16 U.S.C. § 580p–4(a) to commercial uses, the Court cannot find that the statute is unconstitutional in every conceivable application. It may be that the statute as applied to commercial uses falls within the ambit of constitutionally allowable regulations. In addition, while it is tempting, the Court declines to rule that because 36 C.F.R. § 271.3 explicitly limits only non-commercial uses it is facially invalid. It is conceivable that some non-commercial uses of Smokey Bear would not be eligible for the same level of protection as LightHawk's purely expressive use. The Court will not delve into the gray area of future attempts by the Forest Service to protect its legitimate property interest in the symbol, especially when the parties have not briefed the issue.

█ Further, while LightHawk has not demonstrated that the regulatory scheme would be unconstitutional in all applications, it might be susceptible to an overbreadth challenge because it burdens a substantial amount of protected activity. However, "[a]pplication of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). As LightHawk did not raise the overbreadth issue, it will not be considered. The Court will not embark on its own examination of possible overbreadth without any argument in the record to support, or to refute such a claim.

## CONCLUSION

By ruling that the 16 U.S.C. § 580p–4(a) and 36 C.F.R. § 271.3 are unconstitutional

as applied to LightHawk the Court by no means intends to create an open season on Smokey Bear. While the question is not before the Court the government can likely regulate commercial uses of Smokey Bear as allowed by *USOC*. Those portions of the regulatory scheme addressing solely commercial uses remain intact. However, the statute and regulation, which impose content based restrictions on non-commercial uses, cannot be applied to LightHawk's purely expressive political speech.

THEREFORE, the summary judgment motion of plaintiff LightHawk, the Environmental Air Force is GRANTED, and the summary judgment motion of defendant, the Forest Service is DENIED. The Court DECLARES that 16 U.S.C. § 580p–4(a) and 36 C.F.R. § 271.3 are unconstitutional as applied to LightHawk's non-commercial use of Smokey Bear. The Clerk of the Court is directed to enter judgment so stating, and judgment ENJOINING the Forest Service from enforcing the provisions of 16 U.S.C. § 580p–4(a) or 36 C.F.R. § 271.3 against LightHawk for its use of Smokey Bear in the political advertisement at issue in this case.

EXHIBIT A

# Say it ain't so, Smokey.

### There's a bear in the woods. And he's destroying our heritage.

The U.S. Forest Service is helping big timber companies chop down America's ancient forests in the Pacific Northwest. They say they need the wood. But the truth is, private forest lands can supply all the timber they now take from *our public national forests*.

It's crazy. *90%* of America's ancient forests have been destroyed. With the help of our own Forest Service, timber companies are hacking away at the *last 10%*—and wiping out thousands of American jobs.

It turns out that many more jobs (in salmon fishing, recreation, science, pharmaceuticals, etc) depend on *protecting* intact national forests than on cutting them down.

### To save American jobs— save America's public forests.

The ancient forests are America's heritage—like the Grand Canyon or Old Faithful. Once their complex ecology is destroyed, it can't be replaced.

Today, *your* taxes pay for the destruction of *your* national forests. Speak out against the madness!

### Lighthawk-The Environmental Air Force
For more information about how you can make a difference, contact:
P.O. Box 8163  Santa Fe, New Mexico 87504  (505) 260-2151